LAND, J.
Plaintiff had a contract with United States Engineer’s Office for the delivery of 10,000 cubic yards of stone at the South and South West Passes of the Mississippi river, within 90 days from July 3, 1909. On July 15, 1909, defendant proposed to furnish the stone requisite for the fulfillment of the contract, at 60 cents per net ton of 2,000 pounds f. o. b. cars at Winnfield, at certain guaranteed freight rates. On July 29, 1909, plaintiff notified defendant to commence shipments to Naples, La., and that plaintiff would commence loading his barges on August 5, 1909.
In August, 1909, the plaintiff requested defendant to reduce shipments, and later to stop shipments for a few days. When shipments were resumed, they were made to New Orleans. On September 22, 1909, plaintiff wrote to defendant that he was short 3,100 yards of stone on his South Pass con *915 tract, which would be annulled unless deliveries were made by October 1, 1909, and that his total contract would expire on October 4,' 1909, but that the South West Pass contract would probably be extended, but he would be under an extra expense after October 4, 1909. On September 24, 1909, plaintiff wrote defendant, complaining of the small number of shipments that had been made, and requesting a statement as to when and at what rate the defendant would complete the delivery. The letter concluded as follows:
“Also inform me if it is your desire that I purchase such balance of rock as is required to complete my contract from quarries, charging difference in price, delivered to you. I wish this statement, both for my own information and to lay before Ool. Lansing H. Beach, Corps of Engineers, U. S. Army, who has asked for information.
“I beg to inform you that I am under an expense of practically one hundred and twenty-five ($125.00) dollars per day, and that I am not turning a wheel on account of lack of rock. I cannot allow this state of affairs to continue any longer.”
Defendant replied, assigning a number of causes for delay of shipments, including the checking and suspension of shipments on plaintiff’s order, and objecting to the purchase of rock at its expense. Plaintiff obtained an extension of time on his contract with the government, and the’ defendant continued to ship stone until the full quantity was delivered on or about January 28, 1910. In the meantime, plaintiff complained of the slowness of the deliveries and of damages occasioned thereby, and refused to make payments to the defendant beyond the sum of $1,000 received on November 3, 1909. At the time the delivery of the stone was completed, the plaintiff owed the defendant a balance of $6,580.21.
Plaintiff never offered to pay said balance or any part thereof, but sued the defendant for a balance of $3,954.71. This result was reached by charging defendant with the operating expenses of the plaintiff during October, November, and December, 1909, and January, 1910. In other words, the balance of $6,580.21, due the defendant was absorbed by a claim for damages, under the name of operating expenses.
The defendant pleaded a number of defenses, one of which was that the plaintiff himself violated the contract by refusing to make the stipulated payments. Defendant reconvened, and prayed for judgment for the balance of $6,580.21 due for stone delivered.
There was a verdict and judgment for the plaintiff for $900, and for the defendant for $6,580.21. Plaintiff has appealéd, and the defendant has answered the appeal, praying that the judgment be amended by rejecting the plaintiff’s demand in toto.
The case presented is one. where neither party complied with the stipulations of the contract. The defendant found it impracticable to get stone from the quarry in sufficient quantities to make deliveries within the specified time. Before October 1, 1909, it became evident that the contract as made could not be carried out. The government extended the time for the delivery of the stone, and the defendant continued to make shipments until the whole quantity was delivered. Plaintiff refused to make the stipulated payments to defendant, and paid only $1,000 out of a total of $7,580.21, earned by the defendant under the contract.
It is well settled that a party cannot claim damages for the nonperformance of a contract as to which he himself is in default. Silverman v. Caddo Gas & Oil Co., 127 La. 928, 54 South. 289. That was a suit to recover damages for an alleged breach of a contract to deliver 100,000 barrels of oil, and it appeared that the plaintiff refused to pay the defendant for a part.of the oil delivered under the contract.
The court, inter alia, said:
“To recover damages the plaintiff must begin by showing that he has complied with the terms of the contract.”
*917 It is therefore ordered that the judgment below be amended by rejecting the demand •of the plaintiff with costs, and that as thus ‘amended the said judgment be affirmed, and •that the plaintiff pay costs of appeal.