957 So.2d 842 (2007)
Jill Perry GUTIERREZ
v.
Mohammad MOEZZI and Birjand International, Inc.
No. 2006-CA-1395.
Court of Appeal of Louisiana, Fourth Circuit.
April 11, 2007.
*843 Christy M. Howley, Bowman & Howley, Gretna, LA, for Plaintiff/Appellee.
Randall A. Smith, Michael W. Hill, Smith & Fawer, L.L.C., New Orleans, LA, for Defendant/Appellant.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge MICHAEL E. KIRBY and Judge EDWIN A. LOMBARD).
JOAN BERNARD ARMSTRONG, Chief Judge.
Jill Perry Gutierrez, plaintiff and appellee, filed suit against her former employer, Birjand International, Inc. (Birjand) and its owner and operator, Mohammad J. Moezzi, for breach of a sales commission contract, seeking the balance allegedly due on her commission together with interest, attorney's fees[1] and costs and reasonable damages.
*844 Ms. Gutierrez alleged that she was employed by Mr. Moezzi and Birjand for a number of years as a salaried and commissioned salesperson. She later entered into a contract with Moezzi and Birjand as "an independent commissioned sales consultant for Birjand International, Inc.", with compensation fixed at twenty percent of any sale for which she procured the customer and effected the sale of the defendants' merchandise. Ms. Gutierrez alleges that on or about September 11, 2001, she effected a sale of approximately $75,000 of the defendants' merchandise. She alleges that at that time Mr. Moezzi was the owner and operator of Birjand. According to the petition, Ms. Gutierrez was owed a commission of $15,000 on the sale.
Ms. Gutierrez alleged that on September 24, 2001, she was given a Birjand check in the amount of $1,000 as partial payment of her commission. She attempted to negotiate the check on September 25, 2001; however, the check was dishonored for lack of sufficient funds in Birjand's account. She alleges that the defendants replaced the check with $900 in cash.
Ms. Gutierrez alleged that she relied on her working relationship with the defendants to her detriment, that she fulfilled her part of the contract and that the defendants failed to pay the balance of her commission.
Ms. Gutierrez's petition also seeks return of a rug that she alleges the defendants took from her on consignment.[2]
After appointment of a special process server, the defendants through counsel on October 9, 2003 filed a motion for extension of time, followed on October 30, 2003 by the filing of an answer. The answer incorporates special defenses of failure to state a claim or cause of action, prescription, failure to mitigate damages, equitable estoppel and lack of privity of contract. On November 20, 2003, Mr. Moezzi filed an exception of no cause of action, noting that in her petition, Ms. Gutierrez alleges that she left the employ of the defendants prior to the relevant events giving rise to this lawsuit, and that she was an independent sales consultant only for Birjand. The exception was set for hearing on December 16, 2003 and continued on Ms. Gutierrez's motion to January 7, 2004. On January 8, 2004, on the joint motion of the parties, the trial court continued the exception hearing without date.
At a status conference held on March 10, 2006, the court set the case for trial on May 22, 2006. On May 9, 2006, counsel for the defendants filed a motion to continue the trial, alleging that despite diligent efforts, counsel had been unable to locate his clients to give notice of the trial. The trial court denied the motion at the commencement of the trial on the merits.
Following trial on the merits, the trial court rendered judgment against Mr. Moezzi[3] in the amount of $14,100, the balance due under the contract, together with court costs and interest from the date of judicial demand. The trial court held that Mr. Moezzi would be solely liable because (1) he did not reset his exception for hearing before trial; (2) according to the records of the Secretary of State, Birjand's corporate status was revoked since August 16, 2001[4]; and (3) Mr. Moezzi is the registered *845 agent for service of process, was listed as the director of the corporation, and Birjand's mailing address was the same as his mailing address. Mr. Moezzi filed a devolutive appeal from that judgment. For the reasons that follow, we reverse the judgment of the trial court.
Ms. Gutierrez testified that in 1999 she began to work for Birjand as manager of Birjand, International, a store located on Royal Street in New Orleans. The store's merchandise included oriental rugs, tapestries and other textiles. She was paid a salary and a five percent commission on her sales. Ms. Gutierrez testified that her background was in sales, home decorating and interior design. She left her job as a salaried and commissioned salesperson and store manager in 2001. Thereafter, she met a childhood friend, Merrick Valentino, who was interested in purchasing oriental rugs.
Ms. Gutierrez testified that in September, 2001, she called Mr. Moezzi and told him she had a client who was interested in purchasing oriental rugs. At that point, Mr. Moezzi agreed to pay her as an interior designer. She agreed to work with him on a commission basis, for the industrial standard of twenty percent of the value of the sale. On September 11, 2001, Ms. Gutierrez and Mr. Moezzi took a collection of rugs to Ms. Valentino's home in Lafayette, Louisiana. Ms. Gutierrez was unable to say how many rugs Ms. Valentino purchased. She testified that Ms. Valentino paid $40,000 for a Persian Serapi rug from the turn of the century, a figure that Ms. Gutierrez characterized as an "overcharge" for a rug valued at between $25,000 and $30,000. Ms. Gutierrez testified that Ms. Valentino purchased "two or three other pieces of Oriental rugs", paying for the Serapi with a $40,000 check drawn on her husband's medical practice. According to Ms. Gutierrez, the other pieces were paid for through a furniture trade. Ms. Gutierrez was not present when Mr. Moezzi allegedly picked up the traded furniture.
Ms. Gutierrez testified that Mr. Moezzi gave her a partial payment by a Birjand check in the amount of $1,000. The check was dishonored by the bank for lack of sufficient funds, whereupon Mr. Moezzi gave Ms. Gutierrez a cash payment of $900. Although Ms. Gutierrez asked several times to be paid the balance of her commission, she received no further payments from Mr. Moezzi or Birjand.
Ms. Gutierrez filed a Motion to Dismiss Appeal, contending that counsel for Mr. Moezzi does not have authority to prosecute the appeal on behalf of the absent defendant. The reply brief filed on behalf of Mr. Moezzi does not address the Motion to Dismiss Appeal.
On August 11, 2004, defense counsel served on plaintiff counsel answers to interrogatories in which he gave Mr. Moezzi's then current home address as 185 Guava Alala Alabang, Muntinlupa, Metro Manila, Republic of the Philippines. The interrogatory response indicated no work address, no employer and no telephone number.
At the commencement of trial, defense counsel advised the trial court that he had been unable to locate Mr. Moezzi in order to give him notice of the trial. Mr. Moezzi had not been located by the court officers who had attempted to serve him with notice of trial at his last known address. The record contains an order dated February 10, 2006 in which the trial court ordered that "the status conference is reset for March 10, 2004[sic] to allow defendant's atty. additional time to locate his client." It appears from the record that a status conference was held on March 10, 2006, at which time trial was scheduled for May 22 2006. On May 9, 2006, defense counsel *846 filed a Motion to Continue Trial Date, alleging that he had been unable to locate or speak with his client despite diligent attempts to do so. In support of that motion, counsel submitted his own uncontroverted affidavit, in which he averred:
1. He is counsel of record for the defendants in this case.
2. Despite his efforts, he has not been able to locate his client, Mohammad Moezzi, since sometime prior to August 29, 2005, the date Hurricane Katrina made landfall near New Orleans.
3. Since receiving word in February, 2006, that the plaintiff sought to set a trial date, counsel attempted to locate Mr. Moezzi in several ways. He made telephone calls to Mr. Moezzi's last known phone numbers, and confirmed that the last known address is no longer valid. He performed public record searches utilizing WESTLAW and attempted to contact those persons that might be related to Mr. Moezzi or know his whereabouts. Those efforts were unsuccessful. He performed public record searches to determine whether Mr. Moezzi has, since Hurricane Katrina, purchased or leased rental property, acquired a new telephone number, or taken any other steps that might appear on available credit reports since the hurricane. He did not locate any such information. He also sought out and spoke with people he believed to have been Mr. Moezzi's acquaintances, and none of those persons claimed specific knowledge of his current whereabouts, aside from a belief that he is likely out of the country in the Philippines. Counsel had not located anyone claiming to have spoken to Mr. Moezzi since August 29, 2005.
Mr. Moezzi did not appear at the trial of this matter, and the record does not contain any communication directly by him subsequent to the filing of Answers to Interrogatories in 2004. A return in the record dated September 8, 2006 shows that the Constable was unable to serve Mr. Moezzi through counsel with a Judgment Debtor Rule, the Constable having noted: "Agent here unable to serve."
In support of her motion, Ms. Gutierrez cites La.C.Civ.Pro. art. 2084, which provides in pertinent part:
A legal representative may appeal any appealable judgment rendered against him or affecting the property which he is administering, for the benefit of the person whose property he administers or whom he represents, whenever he considers an appeal necessary or advisable.
Ms. Gutierrez argues that because counsel for Mr. Moezzi is not affected by the trial court's judgment, and because the judgment does not affect any property that counsel is administering, he lacks capacity to prosecute this appeal.
For the definition of "legal representative", the Official Revision Comment of 1960 refers us to La.C.Civ.Pro. art. 5251, which defines "legal representative" as including "an administrator, provisional administrator, administrator of a vacant succession, executor, dative testamentary executor, tutor, administrator of the estate of a minor child, curator, receiver, liquidator, trustee and any officer appointed by a court to administer an estate under its jurisdiction." Retained counsel of record does not fit within that statutory definition.
It is clear from the record that defense counsel has not withdrawn from his representation of Mr. Moezzi. Furthermore, there is no evidence in the record to show any of the grounds for mandatory withdrawal set forth in Article 16, rule 1.16, Rules of Professional Conduct. Absent such a showing, we must conclude that defense counsel's representation of Mr. Moezzi is ongoing, and, concomitant with *847 that representation, counsel's duty vigorously and diligently to represent Mr. Moezzi is likewise an ongoing obligation. Therefore, we deny the Motion to Dismiss Mr. Moezzi's appeal.
Mr. Moezzi bases his appeal on his contentions that the evidence adduced at trial was insufficient to support the judgment of the trial court. He suggests that the appropriate standard of review in such a case is de novo, citing Rabalais v. St. Tammany School Board, 06-0045 (La.App. 1 Cir. 11/3/06), 950 So.2d 765. However, the Louisiana Supreme Court noted the distinction between general sufficiency of evidence and legal sufficiency of evidence in Hall v. Folger Coffee Co., 03-1734, pp. 9-10 (La.4/14/04), 874 So.2d 90, 98-99:
In civil cases, the appropriate standard for appellate review of factual determinations is the manifest error-clearly wrong standard, which precludes the setting aside of a district court's finding of fact unless that finding is clearly wrong in light of the record reviewed in its entirety.
* * *
[T]he only question before the district court was a factual questioni.e., whether Folger submitted sufficient controverting evidence to persuade the trier of fact of the non-existence of the inferred fact that CT Corporation was properly served with service of process. The manifest error standard of review applies to all factual findings, including the district court's factual finding in this case that the evidence presented by Folger proved, more likely than not, that the Halls' original petition was never properly served on CT Corporation.
We are aware of the position of the dissenting justices that a "sufficiency of the evidence" challenge involves a legal question to which the de novo standard of review should be applied. It should be noted however that this court has already rejected that argument in Ambrose v. New Orleans Police Department Ambulance Service, 93-3099, 93-3110, 93-3112 (La.7/5/94), 639 So.2d 216 and, more recently, by unanimous vote in Nabors Drilling USA v. Davis, XXXX-XXXX (La.10/21/03), 857 So.2d 407, 416. In both of those cases, this court held that the manifest error standard of review applies to all factual findings, including sufficiency of the evidence challenges. We acknowledge, however, the well-established principle of Louisiana law that legal sufficiency of the evidence challenges, such as those presented by motions for summary judgment, motions for directed verdict, and motions for judgment notwithstanding the verdict, are subject to the de novo standard of review that is used for all legal issues.
The Supreme Court then reiterated the two-part test for reversal of the factfinder's determinations: (1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). The reviewing court must always keep in mind that if the trial court's findings are reasonable in light of the record reviewed in its entirety, the appellate court may not reverse, even if convinced that had it been sitting as trier of fact, it would have weighed the evidence differently. Hall v. Folger Coffee Co., supra at p. 11, 874 So.2d at 99.
Mr. Moezzi contends that Ms. Gutierrez did not establish the amount of commission to which she was entitled. When a written contract is not required by law, a contract not reduced to writing, for a price or, in the absence of a price, for a *848 value not in excess of five hundred dollars may be proved by competent evidence. However, if the price or value is in excess of five hundred dollars, as in the instant case, the contract must be proved by at least one witness and other corroborating circumstances. La.C.C. art. 1846. A party to a lawsuit may serve as his own credible witness for the purpose of satisfying this article, and, although the party must show other circumstances which corroborate his claim, only general corroboration is required, not independent proof of every detail of his testimony. Lee Eyster and Associates, Inc. v. Favor, 504 So.2d 580, 582 (La.App. 4 Cir.1987). In that case, a realtor sought a commission, and this Court, applying the manifest error standard of review, affirmed the trial court's award of the commission. The Court noted that the plaintiff produced not only his own testimony of the existence of an oral brokerage contract, but also several pieces of documentary evidence which the trier of fact reasonably could have found to be corroborative.
In Sun Drilling Products Corp. v. Rayborn, 00-1884 (La.App. 4 Cir. 10/3/01), 798 So.2d 1141, a corporation's minority shareholder reconvened in an action claiming the existence of an oral contract between himself and certain individual investors in the corporation for payment of cash, a promissory note, an employment contract, a royalty contract and chairmanship of the corporation's board of directors. This Court noted that La.C.C. art. 2232 requires the claimant to prove all aspects of a contract, including its terms. Sun Drilling Products Corp. v. Rayborn at p. 10, 798 So.2d at 1149. Moreover, since the claim was for payment of money above $500 in value, the claimant must prove the contract's existence and terms by at least one credible witness and other corroborating circumstances, citing La.C.C. art. 1846 and Executive Recruitment, Inc. v. Reed and Carnrick Pharmaceuticals, 474 So.2d 473, 474 (La.App. 4 Cir.1985). The Court recognized that the claimant may serve as the "one credible witness", and that only general corroborating circumstances are required to support his claim. The trial court relied on Rayborn's testimony as to the terms of the contract. It found corroboration in an entry in the corporation's internal books showing that in September 1995 a majority of the corporation's board of directors resolved that a debt of the corporation in the amount of $1.3 million to Rayborn should be removed from the internal books. This Court reversed, holding that Rayborn had not offered sufficient proof of a debt owed individually by the corporation's investor:
Rayborn bears the burden of proving both the existence and terms (including the amount) of the oral agreement. We do not find that the record establishes that Rayborn proved by a preponderance of the evidence that Heller [an investor in the corporation] personally agreed to pay Rayborn $1.3 million. Only Rayborn's testimony supports the finding that Heller personally agreed to pay Rayborn $1.3 million. Rayborn's attempts to establish proof of the obligation . . . consistently referenced Sun's indebtedness, as opposed to a debt owed by the individual investors. Other than Rayborn's conflicting testimony, the record contains no evidence to corroborate the existence and terms of the alleged oral agreement between the individual investors and Rayborn.
Sun Drilling Products Corp. v. Rayborn at pp. 11-12, 798 So.2d at 1150. This Court then reversed the trial court's judgment insofar as it had awarded damages on the alleged oral contract with the individual investors.
*849 Furthermore, the party who demands performance of an obligation must prove the existence of the obligation. La.C.C. art. 1831.
Ms. Gutierrez testified that she has an oral contract with Mr. Moezzi, not with Birjand. However, it is clear that the corroborating evidence she introduced consisted only of a check drawn on the Birjand corporate account. This evidence, like the corporate bookkeeping entry in Sun Drilling Products Corp. v. Rayborn, proves only that there was an agreement between Ms. Gutierrez and Birjand to pay some unspecified commission. As such, it does not corroborate Ms. Gutierrez's testimony that she had an oral contract with Mr. Moezzi individually.
Likewise, the copy of the face only of Birjand's check, without a copy of the reverse of the check, does not support a finding of the existence of an oral agreement between Ms. Gutierrez and Birjand or Mr. Moezzi. This Court held in Carrier Limousine Service, Inc. v. Johnson, 547 So.2d 21, 24 (La.App. 4 Cir.1989):
In order to prove a prima facie case for the existence of the verbal purchase agreement and payment of the purchase price plaintiff was required to offer one credible witness and other corroborating circumstances. La.C.C. Art. 1846. The photocopy of the face of the check does not furnish any corroboration. Absent proof of the defendant's endorsement, or the testimony of the maker of the check, the check itself is mere hearsay insofar as it was offered to prove that it was issued to JOHNSON and that he received the proceeds.
Ms. Gutierrez's testimony was not clear as to the number and value of the rugs sold to Ms. Valentino. She testified that there were either two, three or four rugs, and that only the Serapi was sold for cash (a check in the amount of $40,000). She did not specify the quantity, specific type or value of the furniture that allegedly was bartered for the remaining rug or rugs. As to the value of the other rugs, Ms. Gutierrez testified that one was a Herez, with a value of $10,000 or $15,000 or $20,000. When the computation of commission by the trial court was suggested to be $12,000, and not the $15,000 found in the demand, Ms. Gutierrez testified as follows:
Well, the whole thing is kind of crazy because it turned into a trade. I don't know. I mean, if hethat's what I assumed that everything was valued at. I don't know. It says approximately right here [referring to the petition]. It says approximately.
On cross-examination, Ms. Gutierrez was unable to testify to the amount for which Mr. Moezzi sold the furniture he allegedly took in trade from Ms. Valentino for the balance of the rug or rugs. Ms. Gutierrez was neither offered nor qualified as an expert in the valuation of furniture, and therefore could not place a value on Ms. Valentino's furniture. Furthermore, Ms. Gutierrez offered no evidence at all as to what type or pieces of furniture were bartered for the remaining rug or rugs.
In the absence of corroborating evidence to establish that a claimant procured business or that billings in the amount he claimed actually were made, the claim must be disallowed. See Bacon v. Scofield's Quality Printers, Inc., 212 So.2d 724 (La.App. 4 Cir.1968).
There is no indication that Ms. Gutierrez made any effort to procure the testimony of Ms. Valentino, who was in a position, arguably, to testify as to the value of the rugs she acquired from either Birjand or Mr. Moezzi and as to the valuation of the furniture she allegedly traded to Birjand or Mr. Moezzi in partial payment for her *850 rugs. Ms. Gutierrez's incomplete testimony concerning the value of the rugs, the $40,000 check drawn on whichever account, and the furniture barter is totally uncorroborated.
Mr. Moezzi contends that he should not be held liable individually for sales commissions allegedly owed for work performed by Ms. Gutierrez for the benefit of the Birjand corporation. The Louisiana Supreme Court addressed the issue in Riggins v. Dixie Shoring Co., Inc., 590 So.2d 1164, 1167-1169 (La.1991)
The general rule that corporations are distinct legal entities, separate from the individuals who comprise them, and that the shareholders are not liable for the debts of the corporation, is statutory in origin and well supported by the jurisprudence. [Citations omitted] The economic purpose underlying this framework of limited liability was expressed by the First Circuit over a quarter century ago: "[P]rotection from individual liability encourages and promotes business and industry". [Citation omitted] Additionally, this shareholder liability shield encourages business investments in high-risk areas by enabling investors who utilize the corporate form to make capital contributions to corporations while insulating their personal wealth from the risks inherent in business. [Citations omitted] No matter the size of the business, incorporation is an optional form for conducting business in Louisiana. In fact, the 1968 revision to the corporation laws now allow a single individual to incorporate. LSA-R.S. 12:21.
Because of the beneficial role of the corporate concept, the limited liability attendant to corporate ownership should be disregarded only in exceptional circumstances. [Citation omitted] Moreover, if the plaintiffs do not allege shareholder fraud, they bear a heavy burden of proving that the shareholders disregarded the corporate entity to such an extent that it ceased to become distinguishable from themselves. [Citations omitted].
There are limited exceptions to the rule of non-liability of shareholders for the debts of a corporation, where the court may ignore the corporate fiction and hold the individual shareholders liable. Generally, that is done where the corporation is found to be simply the "alter ego" of the shareholder. It usually involves situations where fraud or deceit has been practiced by the shareholder acting through the corporation. LSA-R.S. 12:95. [Citations omitted] Another basis for piercing the corporate veil is when the shareholders disregard the requisite corporate formalities to the extent that the corporation ceases to be distinguishable from its shareholders. [Citations omitted].
Some of the factors courts consider when determining whether to apply the alter ego doctrine include, but are not limited to: 1) commingling of corporate and shareholder funds; 2) failure to follow statutory formalities for incorporating and transacting corporate affairs; 3) undercapitalization; 4) failure to provide separate bank accounts and bookkeeping records; and 5) failure to hold regular shareholder and director meetings. [Citations omitted].
The fact that one individual owns a majority of stock in the corporation does not in itself make that individual liable for corporate debts. [Citations omitted] This is particularly true in the case of a closely held corporation where often corporate business is conducted by the majority, or sole, stockholder.
Louisiana courts are reluctant to hold a shareholder, officer, or director liable *851 for corporate obligations, in the absence of fraud, malfeasance, or criminal wrongdoing. LSA-R.S. 12:93(B); 12:95. [Citations omitted.] . . . Furthermore, corporate agents are generally not liable for corporate debts and the burden of establishing the contrary is on the corporate creditor.
Ms. Gutierrez has neither alleged nor proven fraud, malfeasance or criminal wrongdoing. Ms. Gutierrez clearly testified that when she worked at the textile store she worked for Birjand, the corporation. It was her testimony that after she quit that job, she then worked under an oral agreement as an independent sales consultant for Mr. Moezzi. She admitted on cross-examination that the only evidence she had corroborating her testimony that she and Mr. Moezzi had entered into an oral sales consultancy contract was the $1,000 check, written on Birjand's account. This evidence contradicts, rather than corroborates her claim that she had a contract with Mr. Moezzi, individually, and not with Birjand. There is no evidence of record to show a basis for taking the radical step of disregarding Birjand's corporate existence and holding Mr. Moezzi personally liable for the corporate debts. Ms. Gutierrez neither alleged nor offered proof of the elements set out in the Riggins case to justify imposition of individual liability on Mr. Moezzi for an alleged debt of the corporation. She demonstrated, to the contrary, that the corporation did maintain separate accounts; since the only documentary evidence she offered at trial was a check drawn on a corporate account. Neither is there evidence of record that the corporation did not observe formalities such as regular shareholder and directors' meetings.
The statement in the trial court judgment that the Secretary of State's records indicate that the corporation's "corporate status had been revoked" is not supported by the record. There is no mention of an alleged revocation of Birjand's corporate charter in the trial transcript or in post-trial memoranda filed by either party[5]. Ms. Gutierrez argues for the first *852 time in her appellate brief that Birjand's charter was revoked for failure to file four annual reports; however, this argument is not supported by any reference to an exhibit of record or to transcribed testimony. Furthermore, page 12 of the trial transcript, cited by Ms. Gutierrez in brief to support her contention, contains no reference to corporate status or charter revocation[6].
As a court of record, we are limited in our scope of review to evidence that appears in the record of the proceedings. There is no mention of a revocation of the corporate charter in the trial transcript, nor is there any exhibit in the record indicating such revocation. Because of these circumstances, we are compelled to disregard the comment in the judgment concerning revocation of Birjand's corporate charter.
Ms. Gutierrez contended below that Mr. Moezzi's absence from the trial gives rise to an inference that his testimony would have been unfavorable to his case, citing Jarrett v. Climatrol Corp., 185 So.2d 63 (La.App. 4 Cir.1966). The uncontroverted affidavit submitted by counsel for Mr. Moezzi establishes that the latter has not received notice of the trial date and, at last contact, was living in the Republic of the Philippines[7]. Ms. Gutierrez resisted the Motion to Continue the trial filed on Mr. Moezzi's behalf. Had that motion been granted, the trial would have been continued until such time as Mr. Moezzi had been located and notified of the new trial date. Since Ms. Gutierrez insisted that the trial go forward in the absence of notice to Mr. Moezzi[8], it would be inequitable to allow her to have the benefit of the negative inference of his absence. See Merritt v. Gillentine, 151 So.2d 169 (La. App. 3 Cir.1963).
For the foregoing reasons, we are forced to conclude that Ms. Gutierrez did not bear her burden of proving by a preponderance of evidence that she entered into an oral commission contract with Mr. Moezzi individually, or the value of the sale she made to Ms. Valentino, or grounds for piercing the corporate veil to hold Mr. Moezzi personally liable for any debt to be proven to be owed by Birjand.
REVERSED.
NOTES
[1] Ms. Gutierrez did not introduce evidence showing entitlement to attorney's fees at trial and did not present argument at trial or in her appellate brief concerning this issue. The trial court's judgment did not award attorney's fees.
[2] Ms. Gutierrez offered no evidence at trial and no argument in her appellate brief to support this claim.
[3] The trial court cast only Mr. Moezzi in judgment; no judgment was rendered against Birjand. Ms. Gutierrez has not appealed the judgment.
[4] We find no documentary or testimonial evidence in the record to support this conclusion.
[5] During oral argument, counsel suggested that the trial judge had taken "judicial notice" of the Birjand corporation's delinquency in filing reports with the Secretary of State and the resulting charter revocation. Based upon our review of the applicable provision in the Code of Evidence and jurisprudence thereunder, it is clear that the revocation does not come within the scope of matters as to which the court may take judicial notice. La.C.C. art. 202 B(1)(b) provides that judicial notice may be taken of "Rules of . . . agencies of this state that have been duly published and promulgated in the Louisiana Register; or (e) Rules and decisions of boards, commissions, and agencies of . . . any state, . . . which have been duly published and promulgated and which have the effect of law within their respective jurisdictions." There is no indication that the revocation was published in the Louisiana Register. The Third Circuit took judicial notice of a bank merger based on a Certificate of Merger found in the records of the Louisiana Office of Financial Institutions in Premier Bank f/d/b/a Guaranty Bank v. Daigle, 90-1305 (La.App. 3 Cir. 5/20/92), 599 So.2d 503. However, in Finnie v. LeBlanc, 03-1013 (La.App. 3 Cir. 3/10/04), 875 So.2d 71, the same court refused to allow judicial notice to be taken of filings in a Bankruptcy case. In Francis v. Texas & P. Rwy. Emp. Hospital Assn., 148 So.2d 118 (La.App. 3 Cir. 1963), the court held that a publication issued by the Secretary of State listing agents for service of process was susceptible of being admissible evidence, but was not the proper subject for judicial notice. This Court refused to allow judicial notice to be taken of the fact that a constitutional amendment had been approved by the voters, instead requiring that the Secretary of State's certificate acknowledging that fact be filed in the record. City of New Orleans v. Grosch, 49 So.2d 435 (La.App.Orleans, 1950). We find the instant case to present circumstances analogous to those in the Francis and Grosch cases, as to which judicial notice was found to be inappropriate.
[6] We note that the record does not contain any order or other statement that the case was to be held open for additional evidence.
[7] Mr. Moezzi's Answers to Interrogatories filed on or about August 11, 2004, listed his address in Manila, Republic of the Philippines. The order setting the case for trial is dated march 10, 2006, and follows an order dated February 10, 2006 in which a status conference was continued to allow counsel additional time to locate his client.
[8] Mr. Moezzi has not raised a constitutional argument on appeal.