| | | |
|---|---|---|
| **CIRCLE, LLC** | * | **NO. 2022-CA-0381** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **M&L ENGINE, L.L.C.** | * | |
| | | **FOURTH CIRCUIT** |
| | * | |
| | | **STATE OF LOUISIANA** |

\* \* \* \* \* \* \*

APPEAL FROM
25TH JDC, PARISH OF PLAQUEMINES
NO. 65-999, DIVISION "B"
Honorable Michael D. Clement, Judge
\* \* \* \* \* \*
**Judge Dale N. Atkins**
\* \* \* \* \* \*

(Court composed of Chief Judge Terri F. Love, Judge Dale N. Atkins, Judge Pro Tempore James F. McKay, III)

**LOVE, C.J., DISSENTS AND ASSIGNS REASONS**

Charles A. Cerise, Jr.
Jeffrey Edward Richardson
James T. Rogers, III
William K. Wright, IV
Luke G. LaHaye
ADAMS AND REESE LLP
701 Poydras Street, Suite 4500
One Shell Square
New Orleans, LA 70139

      COUNSEL FOR APPELLANTS, Circle, LLC, and Michael Wolfe

Daniel M. Redmann
DUPLASS, ZWAIN, BOURGEOIS, PFISTER, WEINSTOCK & BOGART
3838 N. Causeway Boulevard, Suite 2900
Metairie, LA 70002

      COUNSEL FOR APPELLEE, M&L Engine, LLC

                                          **AFFIRMED**
                                **December 19, 2022**

DNA
JFM

This is a contract matter. Appellants, Circle, LLC ("Circle"), and Michael Wolfe ("Mr. Wolfe"), appeal the trial court's April 18, 2022 judgment, which granted the Motion for Summary Judgment filed by M&L Engine, LLC ("M&L"). For the following reasons, we affirm.

## FACTUAL BACKGROUND

Circle contracted with Lafourche Parish to perform drainage work, which included the installation of pumps. Thereafter, M&L issued quote number LP021319 to Circle on February 13, 2019, for the drainage project and titled the quote "Industrial Park Floodwall Phase II – T-Bois Pump Station – Larose, Louisiana." The quote pertained to the provision of equipment, including two #4836 Lo-Lift 48" Water Lubricated Propeller Pumps, as well as "start[-]up services, lube and delivery to the job site." Regarding payment, the quote called for "20% down; Net on delivery—or—Net 30 days with open account." Further, the quote provided for delivery 12-14 weeks after receipt of the order. Circle executed a purchase order on May 29, 2019, in response to the quote from M&L. On June 7, 2019, Circle directly deposited twenty percent of the purchase as down payment to M&L. The parties do not dispute that by these actions they formed a contract.

1

Thereafter, on September 18, 2019, M&L notified Circle that Lo-Lift, the manufacturer of the pumps, had experienced a problem, thereby resulting in a potential three-week delay for delivery of the pumps. M&L ultimately delivered one of the pumps on October 11, 2019, and sent Circle an invoice for the amount still due on November 12, 2019. Subsequently, M&L delivered the second pump on December 5, 2019.

Circle failed to pay the balance, and M&L emailed Circle on January 23, 2020, notifying that M&L would stop its attendant work on the pumps until Circle paid the balance of the account. Circle requested a meeting, which occurred on January 27, 2020. Present at the meeting were Mr. Wolfe, Circle's president; Troy Foret ("Mr. Foret"), Circle's project manager; Justin Baudoin ("Mr. Baudoin"), M&L's sales manager; and Ryan Marmande ("Mr. Marmande"), Mr. Baudoin's boss. The parties dispute what happened during the meeting. Circle contends that Mr. Wolfe and Mr. Foret discussed the costs that Circle had incurred due to the delay in the delivery of the pumps, including the costs of keeping its equipment on site longer than anticipated and the damage to Circle's business with Lafourche Parish. Further, Circle asserts that Mr. Wolfe and Mr. Foret explained that Circle was still waiting to receive its payment from Lafourche Parish. Circle alleges that Mr. Baudoin and Mr. Marmande agreed at that meeting that Circle would pay all of the amount due on the account except for $35,000, which Circle would hold toward any costs that Circle incurred from the delay. M&L, however, disputes that they came to such an agreement.

On January 28, 2020, Circle paid M&L $131,525 and then paid M&L $40,526 on February 28, 2020, thereby leaving a balance on the account of $35,000. On March 2, 2020, Mr. Foret emailed Mr. Baudoin, asking if M&L had

2

received payment. Mr. Baudoin replied the next day that M&L had received the payment but that the payment was not the full amount due on the account; and he advised Mr. Foret that the remainder was due. In response, Mr. Foret stated that he believed that at the January 27, 2020 meeting, M&L agreed that the remainder would be held until the matter of the delay costs had been settled. The next day, Mr. Baudoin replied that M&L was suspending all work until full payment was made on the account. M&L then filed a lien on March 10, 2020.

On March 25, 2020, Mr. Foret emailed Mr. Baudoin again concerning issues with a pump, stating that the problem should be under warranty and asking if M&L could send someone to look at it. Mr. Baudoin reiterated that M&L would perform no further work until the balance was paid. Circle eventually contracted with other companies to complete the project.

## PROCEDURAL HISTORY

On April 7, 2020, Circle filed a Petition for Damages ("Petition") against M&L, seeking damages allegedly caused by the delay in the delivery and set up of the pumps. In response, on June 29, 2020, M&L filed an answer and a reconventional demand against Circle; and M&L filed a third-party demand against Mr. Wolfe and Lo-Lift. M&L also filed a Motion for Summary Judgment against Circle and Mr. Wolfe on August 20, 2021. Therein, M&L asserted that "the uncontested facts and applicable law show that M&L is entitled to judgment against [Circle] and [Mr. Wolfe], *in solido*, in the amount of $35,000.00, plus services charges of $525.00 per month from the date the account was over thirty days past due . . . ." On December 2, 2021, the trial court denied M&L's Motion

3

for Summary Judgment, citing La. R.S. 9:2781(A)[1] in the reasons for judgment and stating that "M&L did not submit an affidavit of correctness of account showing the current amount owed nor was there an affidavit attesting to the authenticity of the quote or the invoice. In other words, M&L failed to present a *prima facie* case . . . ."

On February 24, 2022, M&L filed a second Motion for Summary Judgment setting forth documentation of the amount it claimed Circle owed on the account and referring to its prior motion for summary judgment. Circle and Mr. Wolfe filed their opposition to the motion on March 21, and M&L replied on March 29. On April 18, 2022, the trial court conducted a hearing and granted M&L's Motion for Summary Judgment. This appeal by Circle and Mr. Wolfe (collectively, "Appellants") timely follows.[2]

## ASSIGNMENTS OF ERROR

Appellants assert two assignments of error:

1.    A party that has breached a contract cannot recover from another party for breach of that contract. The trial court erred in awarding summary judgment to M&L based on M&L's contract with Circle because M&L itself breached the contract in multiple ways.

2.    The trial court erred in awarding summary judgment to M&L based on its claim that Circle owed $35,000 (plus attorney fees and service charges) because there is a genuine dispute of fact on whether the parties agreed—on January 27, 2020—that Circle does not yet owe $35,000 and may never owe it.

Before analyzing the merits of the parties' arguments, we turn to the principles applicable to the summary judgment procedure.

---

[1] Louisiana Revised Statutes 9:2781 pertains to open accounts.

[2] We note that Circle's and Mr. Wolfe's claims against M&L for any damages occasioned by the delays are currently pending before the trial court, with trial set for January 17, 2023.

**DISCUSSION**

*SUMMARY JUDGMENT PRINCIPLES*

"The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action . . . ." La. C.C.P. art. 966(A)(2). It "is favored and shall be construed to accomplish these ends." *Id. See Citron v. Gentilly Carnival Club, Inc.*, 2014-1096, p. 10 (La. App. 4 Cir. 4/15/15), 165 So.3d 304, 310-11. "After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3).

"An appellate court applies the *de novo* standard of review in examining the trial court's ruling on a motion for summary judgment and utilizes 'the same criteria that govern the trial court's determination of whether summary judgment is appropriate.'" *Jones v. Boot Bar & Grill, C. Napco, Inc.*, 2022-0154, p. 12 (La. App. 4 Cir. 10/05/22), ___ So.3d ___, ___, 2022 WL 5110928, at *5 (quoting *Knox v. Elite Prot. Sols. & Willie's Chicken Shack, LLC*, 2021-0419, p. 9 (La. App. 4 Cir. 10/13/21), ___ So.3d ___, ___, 2021 WL 4771758, at *4). Accordingly, "appellate courts ask the same questions the trial court does in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law." *Id.* (quoting *Hood v. Cotter*, 2008-0215, 0237, p. 9 (La. 12/2/08), 5 So.3d 819, 824).

On a motion for summary judgment, "[t]he burden of proof rests with the mover." La. C.C.P. art. 966(D)(1). "The party seeking summary judgment has the burden of proving there is no genuine issue of material fact." *Jones*, 2022-0154, p. 12, ___ So.3d at ___, 2022 WL 5110928, at *6 (citing *Suire v. Lafayette City-Par.*

5

*Consol. Gov't*, 2004-1459, 1460, 1466, pp. 26-27 (La. 4/12/05), 907 So.2d 37, 56). Thereafter, "[i]f the movant satisfies the initial burden, the burden shifts to the party opposing summary judgment to present factual support sufficient to show he will be able to satisfy the evidentiary burden at trial." *Id.* at pp. 12-13, ___ So.3d at ___, 2022 WL 5110928, at *6. *See also La. High Sch. Athletics Ass'n, Inc. v. State*, 2012-1471, p. 18 (La. 1/29/13), 107 So.3d 583, 598.

"However, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." *Jones*, 2022-0154, p. 13, ___ So.3d at ___, 2022 WL 5110928, at *6 (quoting *Knox*, 2021-0419, p. 9, ___ So.3d at ___, 2021 WL 4771758, at *5). Only after the motion has been made and properly supported does the burden shift from the mover to the adverse party. *Id.* Subsequently, "the adverse party [must] produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." La. C.C.P. art. 966(D)(1). "The adverse party may not rely on mere allegations or denials to defeat a motion for summary judgment but must provide specific facts showing that a genuine issue remains for trial, and failure to do so will result in the rendering of the summary judgment." *Jones*, 2022-0154, p. 13, ___ So.3d at ___, 2022 WL 5110928, at *6 (citing La. C.C.P. art. 967(B)). Any supporting or opposing affidavits filed in connection with a motion for summary judgment must be based upon the affiant's personal knowledge. La. C.P.P. art. 967(A). "'If the adverse party fails to provide factual evidence sufficient to establish that he will be

6

able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact' and summary judgment is appropriate." *Jones*, 2022-0154, p. 13, ___ So.3d at ___, 2022 WL 5110928, at *6 (quoting *Knox*, 2021-0419, pp. 9-10, ___ So.3d at ___, 2021 WL 4771758, at *5).

In considering a motion for summary judgment, the trial court cannot make credibility determinations but must construe reasonable factual inferences in favor of the party opposing the motion, resolving all doubt in favor of the opponent. *Id.* at p. 14, ___ So.3d at ___, 2022 WL 5110928, at *6 (citing *Citron*, 2014-1096, p. 12, 165 So.3d at 312-13).

"A genuine issue is a triable issue." *Id.* (quoting *Knox*, 2021-0419, p. 10, ___ So.3d at ___, 2021 WL 4771758, at *5). "More precisely, an issue is genuine if reasonable persons could disagree." *Id.* "However, 'if on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue.'" *Id.* "A fact is material when its existence or non-existence may be essential to the plaintiff's cause of action under the applicable theory of recovery." *Id.* "Facts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute." *Id.* "Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of substantive law applicable to the case." *Id.* We now apply these principles in our review of Appellants' assignments of error.

### *ASSIGNMENT OF ERROR NUMBER 1*

In their first assignment of error, Appellants contend that the trial court erred in granting M&L's Motion for Summary Judgment because M&L breached the contract in two ways and thus cannot recover from it. First, Appellants assert that

M&L breached the contract by failing to deliver the pumps in a timely manner. In particular, Appellants state that the terms of the contract specified that delivery of the pumps would be twelve to fourteen weeks after receipt of the order but that neither pump was delivered by this deadline. Second, Appellants assert that M&L breached the contract by failing to perform service on the pumps. They contend that the contract also called for M&L to provide services for the pumps, yet M&L ceased all work on the pumps when Circle failed to pay the remaining balance. In sum, Appellants argue that M&L's actions breached the contract and that the breach precludes M&L from collecting the balance of the amount due under the contract.

In opposition, M&L admits that Circle is entitled to compensation for any damages caused by the delay but maintains that its untimeliness was not a breach of the contract, which would allow Circle to avoid payment of the balance of the account. To this end, M&L asserts that "a delayed performance is treated differently than nonperformance" and that "[t]he law does not allow one to escape an obligation to pay for a thing delivered late, when that same thing is accepted by the buyer." Regarding Circle's contention that M&L breached the contract by failing to perform services on the pumps, M&L argues that "[t]he contract terms make payment due upon delivery of the equipment-not upon certain services being provided whenever the buyer gets around to installing the equipment."

### Delayed Delivery of Pumps

We begin by agreeing with Appellants that the contract promised delivery within twelve to fourteen weeks after receipt of the order and that M&L did not deliver either pump by this deadline. Specifically, Circle placed its order on May 29, 2019, but M&L did not deliver the first pump until October 14, 2019, and the

second pump until December 5, 2019. However, we find that the determining issue is whether M&L's late delivery of the pumps constituted a breach of the contract, which thereby allowed Circle to withhold the remainder of the balance without itself breaching the contract, or if the late delivery merely entitled Circle to delay damages.

Louisiana Civil Code Article 1994 provides that "[a]n obligor is liable for the damages caused by his failure to perform a conventional obligation." It further states that "[a] failure to perform results from nonperformance, defective performance, or delay in performance." Regarding damages associated with delayed performance, La. C.C. art. 1989 provides that "[d]amages for delay in the performance of an obligation are owed from the time the obligor is put in default." It also states that "[o]ther damages are owed from the time the obligor has failed to perform." As the plain language of the article evidences, La. C.C.P. art. 1989 differentiates between damages for an outright failure to perform and for delayed performance, noting that the latter is associated with a default, not a breach. Indeed, Comment (b) to La. C.C.P. art. 1989 states that "[m]oratory damages[3] presuppose a performance actually rendered, although delayed. In such a case, the object of the obligee's recovery is compensation for the injury his interest has sustained because of the obligor's untimeliness in performing. Compensatory damages presuppose, instead, total or partial nonperformance, or defective performance by the obligor. See 2 Litvinoff, Obligations 387 (1975)."

Additionally, we note that Section 1.12 of the Louisiana Civil Law Treatise provides that "[t]he distinction between absolute and relative failure to perform

---

[3] Section 1.13 of the Louisiana Civil Law Treatise explains that "*moratory . . . means, precisely, damages for delay.*"

serves as one of the criteria for determining the damages that the obligee may recover in one and the other case." Further, Section 1.12 of the Louisiana Civil Law Treatise (footnotes omitted) discusses delayed performance and moratory damages:

> [D]elay is a relative failure to perform on the part of an obligor. Rather than final, or definitive, it is a sort of temporary nonperformance with respect to the time element of the obligation that can be cured by the obligor through subsequent rendering of performance plus reparation of the damage that his tardiness may have caused to the obligee. The damages that an obligee may recover in such a case are called *moratory* . . . . Moratory damages thus presuppose a performance actually rendered, although delayed.

Addressing the "other damages" language of La. C.C. art. 1989, Section 1.14 of the Louisiana Civil Law Treatise defines these damages as ones that are caused by something other than delay, such as an "absolute failure to perform;" where performance is no longer possible or of value; or where there is "a relative failure to perform" that does not involve the time of the performance of the obligation but rather the quality of the performance. It further provides that damages for failures other than delay "are called compensatory because they are intended to compensate the obligee for a performance that he will not receive, or will not receive in full."

We observe that La. C.C.P. art. 1989, comment (b), further states:

> Nevertheless, some damages which an obligee may sustain as a result of the untimely satisfaction of his expectations, though grounded on the passage of time, are compensatory rather th[a]n moratory. Thus, if an obligor abandons the construction of a building and the obligee must secure completion by another, it is clear that the obligee, besides other items of recovery, is entitled to recover damages sustained by reason of any delay thus caused, such as rent paid for another building. In that case, the damages for the delay should be regarded as compensatory rather than moratory.

However, we find this portion of the comment inapplicable to the matter *sub judice*. Though Circle contends that it eventually paid other companies to complete

10

the subject project, this occurred after M&L delivered the pumps and Circle refused to pay the remaining $35,000 per the contract.[4] In this regard, we find instructive the case of *Murphy v. Southern Mineral & Land Improvement Co.*, 130 La. 914, 58 So. 766 (La. 1912), the facts of which are similar to those herein presented. Therein, the Louisiana Supreme Court explained:

> The case presented is one where neither party complied with the stipulations of the contract. The defendant found it impracticable to get stone from the quarry in sufficient quantities to make deliveries within the specified time. . . . [T]he defendant continued to make shipments until the whole quantity was delivered. Plaintiff refused to make the stipulated payments to defendant, and paid only $1,000 out of a total of $7,580.21, earned by the defendant under the contract.
>
> It is well settled that a party cannot claim damages for the nonperformance of a contract as to which he himself is in default. *Silverman v. Caddo Gas & Oil Co.*, 127 La. 928, 54 South. 289. That was a suit to recover damages for an alleged breach of a contract to deliver 100,000 barrels of oil, and it appeared that the plaintiff refused to pay the defendant for a part of the oil delivered under the contract.
>
> The court, inter alia, said:
>
>> 'To recover damages the plaintiff must begin by showing that he has complied with the terms of the contract.'

*Murphy*, 130 La. at 916, 58 So. at 767. Here, Appellants have failed to demonstrate compliance with the contract because Circle never paid the remaining $35,000 to M&L for delivery of the pumps per the terms of the contract.

Considering the language of La. C.C. art. 1989 and comment (b), the Civil Law Treatise, and *Murphy*, we find that M&L's late delivery of the pumps was not a breach of the contract because M&L ultimately, though untimely, fulfilled its obligation under the contract to deliver the pumps. By the terms of the contract, at

---

[4] We note that the extra costs Circle allegedly expended to pay other companies were included in Circle's Petition and will be the subject of the upcoming trial before the trial court. These damages are not before this Court in this appeal.

that point, Circle was obligated to pay the balance of the account, and it could separately seek any moratory damages that it sustained by M&L's late delivery. Circle's obligation to pay arose with M&L's December 5, 2019 delivery of the second pump, after which Circle's failure to pay per the terms of the contract constituted non-performance by Circle. Thus, the late delivery of the pumps was not a breach of the contract that relieved Circle from paying the balance of the account. Rather, the untimely delivery of the pumps constituted a delayed performance thereby entitling Circle to moratory damages, which are the subject of the upcoming January 17, 2023 trial.

### *Failure to Perform Services*

As noted, Appellants further argue that M&L breached the contract because it failed to perform the services listed in the contract. The contract included "start[-]up services, lube and delivery to job site." Appellants argue that when M&L ceased its work on the project in January 2020, M&L breached the contract by not providing the services required by the contract. Thus, Appellants conclude that they were not obligated to pay the balance of the contract. However, by the terms of the contract, Circle had thirty days to pay the balance upon delivery of the second pump, not upon completion of the services. By the time Circle requested services from M&L, Circle itself was in default of the contract for non-payment because M&L had already delivered the second pump. *See Murphy*, 130 La. at 916, 58 So. at 767. Just as Circle was not obligated to pay the remainder of the balance until the second pump was delivered, M&L was not obligated to complete the services when Circle failed to make timely payment on the account.

In sum, we conclude that this assignment of error is without merit. M&L did not breach the contract by the untimely delivery of the pumps or by ceasing service when Circle failed to pay the balance of its account.

## *ASSIGNMENT OF ERROR NUMBER 2*

In their second assignment of error, Appellants assert that the trial court erred in granting M&L's second Motion for Summary Judgment because there is a genuine issue of material fact about whether the parties agreed on January 27, 2020, that Circle did not owe $35,000. Specifically, Appellants refer to the alleged oral amendment to the payment terms of the contract that they insist M&L agreed to at the January 27, 2020 meeting between Mr. Wolfe and Mr. Foret from Circle and Mr. Baudoin and Mr. Marmande from M&L. As noted previously, M&L denies that the parties confected any such agreement.

Louisiana Civil Code Article 1831 provides, in pertinent part, that "[a] party who asserts that an obligation . . . has been modified . . . must prove the facts or acts giving rise to the . . . modification . . . ." Additionally, La. C.C. art. 1846 requires that a contract in excess of $500 "must be proved by at least one witness and other corroborating circumstances." In *Guiterrez v. Moezzi*, this Court set forth the standard for the proof of a non-written amendment: "A party to a lawsuit may serve as his own credible witness for the purpose of satisfying [La. C.C. art. 1846], and, although the party must show other circumstances which corroborate his claim, only general corroboration is required, not independent proof of every detail of his testimony." 2006-1395, p. 9 (La. App. 4 Cir. 4/11/07), 957 So.2d 842, 848. *See also Duvio v. Specialty Pools Co.*, 2015-0423, p. 10 (La. App 4 Cir. 6/6/16), 216 So.3d 999, 1008 (wherein this Court held that the corroborating circumstances

13

must come from a source other than the person asserting that the change occurred (citing *Suire*, 2004-1459, 1460, 1466, p. 29 (La. 4/12/05), 907 So.2d at 58)).

For example, in *First Bank and Trust v. Treme*, First Bank and Trust ("First Bank") filed a petition for executory process against Warren G. Treme ("Mr. Treme") to collect amounts allegedly due on a promissory note. 2013-168, p. 2 (La. App. 5 Cir. 10/30/13), 129 So.3d 605, 606. In response, and in pertinent part, the defendant filed a third-party demand against the chairman of the bank, Joseph C. Canizaro ("Mr. Canizaro"). *Id.* at p. 3, 129 So.3d at 606. In the third-party demand, the defendant alleged that he had entered into a joint venture with First Bank to build a banking branch in Kenner, Louisiana, but that Mr. Canizaro used his position as chairman of the bank to interfere with the purchase of the property, thereby breaching his fiduciary duty. *Id.* at pp. 3-4, 129 So.3d at 606. First Bank and Mr. Canizaro filed a motion for partial summary judgment, requesting, in part, that the trial court dismiss Mr. Treme's breach of fiduciary duty claim against Mr. Canizaro because Mr. Treme failed to put forth any evidence of a joint venture relationship or any fiduciary duties between any of the parties. *Id.* at pp. 4-5, 129 So.3d at 608. At the hearing on the motion for partial summary judgment, Mr. Treme submitted his own deposition testimony stating that he had a joint venture agreement with First Bank to build a branch in Kenner and that Mr. Canizaro interfered with that contract. *Id.* at p 10, 129 So.3d at 611. Additionally, Mr. Treme submitted an affidavit of a First Bank Employee, Clark Heebe ("Mr. Heebe"). *Id.* The trial court granted the motion for partial summary judgment, finding "an absence of evidence of a joint venture agreement between Mr. Treme and [First] Bank to build a branch on the alleged site." *Id.* at p. 5, 129 So.3d at 608. In

interpreting La. C.C. art. 1846, the Louisiana Fifth Circuit Court of Appeal affirmed, explaining:

> After our *de novo* review of the partial summary judgment and the evidence submitted, we do not find that Mr. Treme submitted sufficient evidence to prove the existence of a joint venture agreement between him and the Bank. Although Mr. Treme offered his own testimony regarding the alleged joint venture agreement, the submission of Mr. Heebe's affidavit as corroborating evidence is insufficient. Mr. Heebe's affidavit does not state that he had any personal knowledge of a joint venture between Mr. Treme and the Bank. The affidavit simply states that Mr. Heebe "understood from Treme that Treme had agreed to find suitable property" in Kenner to build a branch for the Bank. Mr. Heebe's affidavit is also void of any information of how Mr. Treme and the Bank would conduct the venture for joint profit or the level of control for each party. Without any further corroborating circumstance, Mr. Treme failed to meet the burden of proving an oral contract over $500.00. Because Mr. Treme failed to prove the existence of a joint venture between him and the Bank, there is no need for this Court to address whether Mr. Canizaro intentionally interfered with that contract.

*Id.* at p. 12, 129 So.3d at 612.

As noted previously, this Court must conduct a *de novo* review to decide if there is a genuine issue of a fact whose "existence or non-existence may be essential to" Appellants' cause of action and one that could "potentially insure or preclude recovery, affect [Appellants'] ultimate success, or determine the outcome of the legal dispute." *Jones*, 2022-0154, p. 14, ___ So.3d at ___, 2022 WL 5110928, at *6  (quoting *Knox*, 2021-0419, p. 10, ___ So.3d at ___, 2021 WL 4771758, at *5). Appellants argue that they have shown sufficient, independent corroborating circumstances to provide a genuine issue of material fact as to the existence of the alleged January 27, 2020 agreement to modify the payment terms of the contract. In support, they point to a portion of Mr. Baudoin's deposition testimony, wherein he admitted that the parties met on January 27, 2020. Further, Appellants cite the email exchanges between Mr. Baudoin and Mr. Foret wherein

Mr. Foret "confirmed" the alleged January 27, 2020 agreement and Mr. Baudoin did not disagree with Mr. Foret's statements. Yet, a review of the emails reveals that Mr. Baudoin himself did not refer to the January 27, 2020 meeting or alleged agreement. Rather, he merely replied that M&L would perform no further work because the remaining balance was still due. Additionally, Appellants also observe that in Mr. Baudoin's deposition he did not deny that the January 27, 2020 meeting happened. However, Mr. Baudoin responded that he only recalled Circle's representatives mentioning equipment costs due to the late delivery at the meeting. Thus, Mr. Baudoin's testimony did not negate or corroborate the alleged agreement's existence.

Appellants next point to an affidavit by Mr. Marmande, which M&L submitted in support of its second Motion for Summary Judgment. In the affidavit, Mr. Marmande, stated: "According to M&L's records, Circle, LLC[,] made payments on the Exhibit A invoice in the amount of $131,525.00 on 1/28/20 and $40,526.00 on 2/28/20." Appellants assert that this supports their position because it matches the payment schedule allegedly agreed upon by the parties at the January 27, 2020 meeting. Without additional information though, this fails to demonstrate that the parties agreed that Circle would withhold $35,000 after making the January 28 and February 28 payments.

Therefore, we disagree with Appellants that this evidence constituted independent corroborating circumstances sufficient to raise a genuine issue of material fact as to the existence of the alleged January 27, 2020 agreement. Given this lack of independent "corroborating circumstances," we conclude that the trial court did not err in finding the lack of a genuine issue of material fact that would preclude the granting of M&L's motion for summary judgment.

Based upon our *de novo* review, we find that M&L did not breach the contract by its untimely delivery of the pumps or by ceasing services when Circle failed to pay the balance of its account. Further, we find that Appellants failed to provide "factual evidence sufficient to establish that they will be able to satisfy [their] evidentiary burden of proof at trial" regarding the alleged January 27, 2020 agreement. *Jones*, pp. 12-13, ___ So.3d at ___, 2022 WL 5110928, at *6.

## DECREE

For the foregoing reasons, we affirm the trial court's April 18, 2022 judgment, which granted M&L's second Motion for Summary Judgment.

**AFFIRMED**