141 So.2d 903 (1962)
Dudley D. NORMAN et ux., Plaintiffs-Appellants,
v.
CITY OF SHREVEPORT, Defendant-Appellee.
No. 9728.
Court of Appeal of Louisiana, Second Circuit.
May 22, 1962.
Rehearing Denied June 14, 1962.
*904 L. G. Campbell, Bossier City, for appellants.
J. Bennett Johnston, Jr., Loret J. Ross, Shreveport, for appellee.
Before HARDY, GLADNEY, AYRES, and BOLIN, JJ.
GLADNEY, Judge.
Plaintiffs have appealed from a judgment rejecting their demands. Dudley J. Norman and his wife brought suit against the City of Shreveport for damages as a result of an automobile-fire truck collision, in which Mrs. Norman sustained serious personal injuries. The accident occurred December 16, 1958, in the intersection of Olive Street and Centenary Boulevard, about midafternoon, with weather conditions normal. A prior suit by these plaintiffs was filed within a year after the occurrence, but the suit was dismissed on an exception of no cause or right of action based on grounds of municipal immunity. The present action was instituted December 28, 1960, only after enactment by the Louisiana State Legislature at its 1960 Regular Session, of House Concurrent Resolution No. 70, which authorized the prosecution of this claim with waiver of the defendant's immunity both from suit and from liability At the same Legislative session, Act 621 of 1960 was enacted as an amendment to Art. III, Section 35 of the Louisiana Constitution, LSA, the act empowering the Legislature to waive the immunity from suit and from liability of the State and its agencies and other governmental bodies. This proposed amendment was voted into law by the people of the State.
Counsel for the defendant pleaded that its exception of no cause or right of action sustained as to the prior suit is res judicata for the present suit; that House Concurrent Resolution No. 70 of 1960 and Act 621 are unconstitutional as being contrary to the equal protection and due process clauses of the Fourteenth Amendment of the United States Constitution; that a peremptory exception of no cause or right of action filed by the defendant should be sustained as to damages claimed for plaintiffs' automobile, forasmuch as a conventional subrogation had been executed to an insurance company, thus leaving plaintiffs with no real or actual interest in the subrogation claim; and further, it is averred that the claim for automobile damage is prescribed. The defendant also invoked the last clear chance doctrine. In its answer, the City denied negligence attributable to John D. Harris, Jr., the City employee driving the fire truck, and averred the accident was solely caused by the gross negligence of Mrs. Norman, the driver of the automobile, in several particulars, including: Proceeding through the intersection after hearing the siren blowing; in failing to keep a proper lookout; in driving at an excessive rate of speed; and in failing to immediately stop her automobile upon the approach of the fire truck as required by Section 19-48 of the Shreveport City Code.[1]
*905 Petitioners allege Harris was grossly negligent in driving the fire truck at an excessive rate of speed, in failing to keep a proper lookout, in failing to warn approaching vehicles, and in driving in a careless manner with disregard of the safety of others. It is also alleged that Mrs. Norman entered the intersection on a green light. The City is further charged with negligence in that it maintained an improper offset crossing at the intersection of Olive Street and Centenary Boulevard, in failing to provide the proper system of traffic lights, and that on this particular mission its employees in charge of the fire truck were negligent in failing to use the shortest and least dangerous route to reach their ultimate destination, the scene of a reported fire.
Upon the issues so presented, the case was fully tried on its merits. After the taking of testimony was concluded the trial judge remarked from the bench that in his opinion both drivers were guilty of negligence but that no plea of contributory negligence had been filed on behalf of the defendant. Thereupon, and prior to argument, counsel for the City tendered a special plea of contributory negligence which the court allowed as an amendment to the answer. The judgment of the court rejecting plaintiffs' demands were principally based upon this plea.
Although the industry of counsel on both sides has produced a number of pleas and issues in the trial court, we purposely refrain from considering certain of these as they were either not established by the evidence, or were manifestly without merit. Other issues have been abandoned on appeal. Resolution of the case primarily turns upon the question of whether or not the trial court committed reversible error by its consideration of the plea of contributory negligence.
At the outset we observe that prior to the Code of Civil Procedure, which became effective January 1, 1961, the issue would have been resolved in favor of appellants and consideration of the plea would have been denied. Lobell for Use and Benefit of Hardware Mut. Cas. Co. v. Neal, La. App., 48 So.2d 797 (1st Cir. 1950); Service Fire Insurance Company of New York, et al. v. Suezy, La.App., 77 So.2d 110 (1st Cir. 1954); Calvert Fire Insurance Company v. Lewis, 83 So.2d 139 (La.App.Orleans 1955), reversed on other grounds 231 La. 859, 93 So.2d 194.
Although Article 1005 of the LSA-Code of Civil Procedure expressly requires contributory negligence to be specially pleaded, the provisions of Articles 862, 1154, 2164 and 5051 of the Code have incorporated into our procedural rules the philosophy that such rules are only a means to an end, and not an end in themselves.[2] Undoubtedly, the requirement in the answer of an affirmative plea of contributory negligence *906 has for its purpose the giving of fair notice of the nature of the defense, and preventing surprise. This is evidenced by the following Federal Court decisions applying Rule 8(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A., the source of our own Article 1005 of the Louisiana Code of Civil Procedure, LSA. Sly v. United States, 125 F.Supp. 89 (D.C.Ill.1954), reversed on other grounds 220 F.2d 212 (7th Cir. 1955); Edmonds v. United States, 148 F.Supp. 185 (D.C.Wis.1957).
Article 2164 empowers an appellate court to render any judgment which is just, legal, and proper upon the record on appeal. An authoritative comment under this article states its purpose is to give an appellate court complete freedom to do justice on the record irrespective of whether a particular legal point or theory was made, argued, or passed on by the court below. This article insures that the "theory of the case" doctrine is not applicable to appeals. Of particular importance in dealing with the question of whether the trial judge erred in his consideration of the plea of contributory negligence is Article 1154, which allows, within the discretion of the court, the resolution of issues which may not have been raised by the pleadings. Under this article the law has been changed to authorize the trial judge to permit amendments, even on the trial of the case, so as to plead the material facts supporting an affirmative defense pleaded only generally or as a legal conclusion in the original answer. See Official Revision Comments under LSA-C.C.P. Arts. 854, 862 and 1154. In respondent's original answer, the particular acts alleged to constitute the gross negligence of Mrs. Norman were expressly stated in paragraph 24 of the answer. The plea of contributory negligence as filed declared Mrs. Norman was contributorily negligent by reason of those same specifications. The trial court held that defendant's amended answer which specially set forth the plea of contributory negligence, was properly filed under Art. 1154 of the LSA-Code of Civil Procedure. In this ruling we concur.
In what respects were the drivers of the respective vehicles guilty of negligence? The evidence pertaining to this issue discloses that Mrs. Norman was driving west on Olive Street, returning to her employment with the City of Shreveport. She testified that she brought her automobile to a stop at the intersection of Olive Street with Centenary Boulevard, and waited for the red light to turn green before proceeding. She testified:
"Q. And then what happened?
"A. Well, when * * * the cars are parked parallel in front of Horton's Drug, and when I pulled into the intersection and was even with them is when I thought I heard the siren. That is all I know.
"Q. Now, where is Horton's Drug located with reference to that intersection, Mrs. Norman? Is it on which corner, the northeast corner, the northwest or which corner?
"A. Well, it was on the right from where I was parked."
*907 While this maneuver of Mrs. Norman was taking place, Harris was driving the fire engine south on Centenary Boulevard in answer to an emergency fire call. He testified that as he came over the hill approximately one block from the intersection, he reduced the speed of the fire truck and checked as to both sides of Olive Street before reaching the intersection, and that it was only when Mrs. Norman was some forty feet away that he observed her approach. The two vehicles collided, according to the investigating police, with the point of impact in the north traffic lane of Olive Street at a point 28 feet 1 inch west of the pole located at the northeast corner of the intersection. Olive Street is shown to be 28 feet 8 inches wide and Centenary 39 feet 4 inches wide. There is a ten foot offset to the east in Centenary as it proceeds south to Olive Street. From this it is argued by counsel for the appellants that Mrs. Norman had traversed approximately three-fourths of the intersection at the time of impact.
With reference to the speed of the fire truck, the evidence shows that from the point of impact the fire truck continued 236 feet down the street, contacting and shearing off a 16 inch pole guarded by four steel pipes, and continued an additional 40 feet before coming to a stop. Several witnesses testified that the fire truck was proceeding at a high rate of speed, whereas the four firemen aboard the truck uniformly testified its speed was no greater than thirty-five miles per hour. The preponderance of the evidence discloses that the blowing of the siren and ringing of the bell were plainly audible to motorists near the intersection, other than Mrs. Norman, and these, upon hearing the warning signals, and in compliance with the City ordinance, immediately stopped at the curb to await the passing of the oncoming fire truck. It was proven beyond doubt that Mrs. Norman entered the intersection on the green light.
The foregoing facts, in our opinion, conclusively show that a legal duty was imposed upon Mrs. Norman when she heard or thought she heard the siren to proceed no further into the intersection. In failing to perform this duty she was undoubtedly, in our opinion, contributorily negligent and we approve of this ruling of the trial judge.
Counsel for appellee earnestly argues that there was no negligence attributable to the driver of the fire truck. The trial judge, however, held otherwise and his decision is not manifestly erroneous. Although the City ordinance regulating emergency vehicles permits such an emergency vehicle to proceed past a red or stop signal sign, it enjoins the drivers of such vehicles in an emergency not to endanger life or property and provides that such exemptions shall not protect the driver from the consequences of reckless disregard for the safety of others. Whether or not the fire truck was being driven in a manner reflecting disregard of the safety of others is purely a factual issue and the decision of the trier of fact thereon is entitled to great weight.
The foregoing conclusions, in our opinion, suffice to dispose of the appeal and we deem it unnecessary to belabor the other issues presented, with the exception of the question of the application of the last clear chance doctrine, so earnestly urged by the plaintiffs.
Finally, we note our position with reference to the defendant's contention that Mrs. Norman had the last clear chance to avoid the accident. The trial judge concluded that both vehicles entered the intersection and collided with each other due to the failure of each driver to observe and respect duties imposed by law, and that their negligence was concurrent and active in that the fault of each driver continued down to the moment of impact. We concur in his finding that the circumstances do not give rise to application of the last clear chance doctrine.
For the foregoing reasons, the judgment from which appealed is affirmed at appellants' costs.
NOTES
[1] Sec. 19-48. "Operation of vehicles on approach of authorized emergency vehicles."

"Upon approach of any authorized emergency vehicle giving audible signal by an appropriate device, the driver of every other vehicle shall immediately drive to a position as near as possible and parallel to the right-hand side of the street or highway, clear of any intersection, and shall stop and remain there, unless otherwise directed by a police or traffic officer, until the authorized emergency vehicle has passed."
[2] These Articles of the Code of Civil Procedure provide as follows:

Art. 862. "Except as provided in Article 1703, a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief."
Art. 1005. "The answer shall set forth affirmatively arbitration and award, assumption of risk, contributory negligence, * * *, and any other matter constituting an affirmative defense. If a party has mistakenly designated an affirmative defense as an incidental demand, or an incidental demand as an affirmative defense, and if justice so requires, the court, on such terms as it may prescribe, shall treat the pleading as if there had been a proper designation."
Art. 1154. "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleading. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure to so amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby, and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense on the merits. The court may grant a continuance to enable the objecting party to meet such evidence."
Art. 2164. "The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. * * *"
Art. 5051. "The articles of this Code are to be construed liberally, and with due regard for the fact that rules of procedure implement the substantive law and are not an end in themselves."