FRUGÉ, Judge.
By two separate proceedings, the plaintiff Department of Highways expropriated: (a) A .798-acre strip in full ownership, subject to a reservation in perpetuity in favor of the defendant of all oil, gas or other minerals; (b) Full ownership of a 3.832-acre tract and a 5.824-acre tract, both subject to the same mineral reservation as hereinabove set forth.
The instant case arises out of the former taking. A companion suit of the same title was based upon the second taking, La.App., 155 So.2d 250. Both appeals were consolidated for argument and this opinion will set forth the reasons for the judgments in both suits.
In the present suit, which involves the .798-acre strip of land, the plaintiff Department of Highways deposited in the registry of the court as its estimate of compensation, $1,197.00 as the value of the land taken. After trial on the merits, the district judge found the value of the property taken to be $3,192.00. In the companion suit, involving the 3.832-acre and 5.824-acre tracts, the plaintiff deposited in the registry of the court $3,462.00. The trial judge found the value of these two tracts to be $18,316.00 and rendered judgment in favor of the defendant in this amount. From both: of these judgments plaintiff has appealed.
The right of the plaintiff to expropriate-the defendant’s property is not at issue, the sole question before this court being the correctness of the trial judge’s valuation of' the land taken.
The trial judge succinctly set forth in his-written reasons the relevant facts which: need be considered by this court, as follows:
“From the evidence the Court finds that the parcels are being taken out of what originally was a plantation of one thousand acres, but which has been reduced by sales to a considerably smaller acreage. The smallest parcel involving less than one acre and the parcel containing 3.832 acres are taken out of a tract of approximately 120 acres, although Mr. Leroy Cobb, one of the appraisers for the Department of Highways treated the fractional acre parcel as being part of a 70 odd: acre tract.
“The 120 acre tract is triangular shaped with a triangular shaped parcel of land owned by the Missouri Pacific Railroad dividing the fractional acre parcel from the 3.832 acres parcel. To the north and west of the 120 acre tract and contiguous thereto, there is another tract owned by the defendant which has been subdivided into lots and some seventy-five have been sold during the past approximately six years. The tract of land out of which the parcel containing 5.824 acres is of a tract of approximately 267 acres and divided from the 120 acre tract by the road which runs from Pecanniere to the Town of Port Barree, La.
“The defendant placed upon the stand John J. Wilson, a licensed realtor and a resident of the City of Opelousas, La., whose qualifications were accepted by the Court, his experience being *247 a buyer and seller of real estate for some thirty odd years and approximately seven years as a realtor and appraiser.
“He testified that in his opinion the parcel of less than an acre which is ■situated in the Town of Port Barre was worth $8,000 per acre, and that the 3.832 acres were worth $5,000 per acre, and the 5.824 were worth $2,400 per acre, and he used as a basis for his •conclusion a sale in 1959 from Valentine to Tarlton Turner of 5.08 acres for $25,000, being- a parcel of land situated to the west of Port Barre some three or four miles away and approximately the same distance east of Opelousas, La.; a sale from Darbonne to Dugas in 1957 of a corner containing .54 of an acre taken out of the southwestern corner of the 267 acre tract out of which the 5.824 acres is being expropriated. The consideration ■ior the slightly more than one-half acre was $3,000. He also considered the sale from the present defendant to the present plaintiff of .231 acre for $3,116, being a triangular piece of :ground on the south side of Highway 190 opposite the 0.798 acres being expropriated herein.
“He was questioned at length as to whether or not he had valued the whole of the tracts and established his values ■on that basis. He admitted doing so, but the Court is convinced that the main basis for his fixing the values which he did were the sales referred to.
“The defendant offered the testimony of Alex F. Watkins, Jr., her husband, as well as Mr. Walter J. Champagne, Jr., and Mr. Paul Dietrich. Mr. Watkins testified concerning the sale of the small triangular parcel to the Highway, the sale of lots in the subdivision carved out of the tract in which the fractional acre and the 3.832 ..acres lie over a period of some six years for $1,000 for inside lots and $1,100 for corner lots measuring 60 x 150 feet. Mr. Champagne testified to having bought three lots in 1960 which measured 60 x 150, one being a corner lot, and the consideration being $3,900, and Mr. Dietrich bought a lot or parcel 100 x 150 feet facing Highway 190 a few hundred feet to the west of the fractional acre parcel for $5,000.
“There was offered in evidence and admitted for such weight as should be given it, a judgment rendered by this Court in the matter entitled Gulf States Utilities Company v. Missouri Pacific Railroad Company, this judgment being rendered and signed on July 30, 1962, wherein a judgment was awarded the Missouri Pacific Railroad Company in the sum of $2266.66 for an easement over 0.85 acre out of approximately twelve acres heretofore referred to which lies between the fractional acre tract and the 3.832 acre tract which was an award of $4,000 per acre.
“The plaintiff, the Louisiana Department of Highways, offered as its first witness Mr. Leroy Cobb, qualified as a realtor and appraiser, who agreed with Mr. Wilson, the witness for the defendant that the fractional acre tracts, that the highest and best use was commercial. Mr. Cobb testified that he considered the tract containing 72.88 acres out of which the fractional acre was being taken and he used sales of Alfred Mouton to Du-charme, which was a mile and half south of Opelousas off of the old Opelousas-Lafayette Highway, and the sale of Singleton to Park Development Corporation to some twenty acres near Opelousas and the sale of Metz to Collins Landos of some thirty-six acres, which property lays several miles to the east of the Watkins property. The Collins Landos property is definitely very low as was testified to by Mr. Wilson and as the Court itself *248 has observed on numerous occasions, having travelled Highway 190 from Opelousas to Baton Rouge and intermediate points hundreds of times.
“Mr. Cobb in his testimony made certain adjustments percentagewise in dealing with these various sales and came up with a value of $1,500 per acre for each acre of the 72.88 acre tract and consequently $1,197 for the fractional acre taken; thus his testimony and that of witness Wilson for the defendant are at considerable variance as Wilson appraised the front on Highway 190 as being commercial and worth $8,000 per acre.
“The Court, in evaluating the testimony of both witnesses and other witnesses, disagrees with the conclusions. In the case of Mr. Cobb, the recent sales used as a basis are not, in the Court’s opinion, comparable, and in the case of Mr. Wilson, he did not consider severance damages in the sale of Watkins to the Highway Department of .231 acre for $3,116.
“The Court is of the opinion that the fractional acre should be paid for on the basis of $4,000 per acre. Dealing with the two larger parcels sought to be taken, the witness for the defendant testified that he considered that the highest and best use of the 3.832 acres to be commercial and the 5.824 semi-commercial and homesite property and that the Collins Landos purchase'from Metz wasn’t comparable because the Watkins property was higher, well-drained land and the Landos property was wooded and extremely low and subject to overflow requiring Landos to build a high dump on which to establish his place of business. He used the same recent sales as a basis of fixing the values in the larger tracts as in the smaller.
“Mr. William J. Fort, a licensed appraiser, testified for the plaintiff and he used several sales, all of which were off of Highway 190 and situated either on gravel or dirt roads and none of which were, in the Court’s opinion comparable. He based his appraisal of $400 an acre for the 3.832 acres and $280 per acre for the 5.824 acres.
“The Court is of the opinion that because of its appreciation of the evidence and location of the property, the comparables and the highest and best use being considered, that the tract containing 3.832 acres is worth $2,500 per acre, and that the tract containing the 5.824 acres is worth $1,500 per acre.”
Counsel for plaintiff urges that the lower court erred in rejecting the opinions of some of the experts. In this regard he contends that a court, having accepted a witness as an expert and having received his testimony, must afford that testimony its due weight.
The record discloses that the .798-acre tract fronts on U. S. Highway 190, and is within the Town of Port Barre, Louisiana. The sales referred to as comparables by Cobb, plaintiff’s expert witness, involve property outside the corporate limits of this town and have no access to Highway 190. It would serve no useful purpose to discuss in great detail all of the sales Cobb sought to introduce as comparables. It suffices to saj^ that none were, from the standpoint of location, comparable to the property expropriated. One sale involved a tract of land some 500 feet off of Highway 190. This piece of property did not front on any road. Another sale concerned property some twelve miles from the Town of Port Barre fronting on a country gravelled lane.
 It is true, as pointed out by counsel for plaintiff, that a court should give consideration to the testimony of each expert, whose opinion appears to1 be well grounded and logical. However, when, as in the instant case, an expert’s opinion is based upon sales of property which are completely dissimilar to the property ex *249 propriated, it is evident that such sales may be disregarded as having no probative value. See State through Dept. of Highways v. Boyer, La.App., 130 So.2d 738.
The trial judge concluded that the fractional acre should be paid for on the basis of $4,000 per acre. This conclusion was reached after hearing all of the witnesses and after consideration of all of the sales submitted as comparables. These sales are fully discussed in the trial judge’s written reasons and, in our opinion, amply support the fair market value as determined by the lower court.
 Turning now to the two parcels of land expropriated in the companion suit, we note that the 3.832-acre tract abuts the corporate limits of Port Barre, while the tract containing 5.24 acres is across a blacktop highway which runs between Lafayette and Port Barre. The trial judge concluded that the fair market value of the 3.832-acre tract prior to the taking was $2,500 per acre. His valuation of the 5.-824-acre tract was $1,500 per acre. Both of these valuations are somewhat lower than the appraised value fixed by defendant’s expert witnesses, but reflect careful consideration of the comparable sales upon which their testimony was based. As in the case of the fractional tract, the trial judge’s written reasons adequately summarize these sales and their probative value in relation to the instant case. In our opinion, -his rejection of the several sales introduced by William Fort, plaintiff’s expert, as comparables was fully justified. A cursory examination of the record reveals that, of the several tracts which Fort sought to use as comparables, none were located anywhere near the two tracts expropriated. One was on a dirt road at least a mile from the highway with no frontage on the highway. Another sale, which he sought to use as a comparable, involved property on a rural road several miles from Highway 190. Accordingly, we find that the valuation of these two tracts as determined by the trial court is neither manifestly excessive or inadequate.
Lastly, counsel for plaintiff urges that the trial court erred in permitting defendant to amend his petition so as to increase the award prayed for in the companion suit. It appears that defendant initially sought judgment in the amount of $13,000 for the 3.832 and 5.824-acre tracts. The testimony of defendant’s experts exceeded this amount, but was not objected to by plaintiff’s counsel. Subsequent to the trial, but before judgment, the trial judge allowed defendant to amend his answer to conform to a judgment in a greater amount.
Pertinent to this issue, LSA-C.C.P. Art. 1154 provides:
“When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleading. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure to so amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby, and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense on the merits. The court may grant a continuance to enable the objecting party to meet such evidence.”
 This article clearly makes it permissible for either litigant to amend his pleadings to conform with the evidence adduced at the trial of the case. There is no indication in the record of the present suit *250 that the plaintiff was surprised by the defendant’s introduction of evidence tending to establish a greater value for the property taken than prayed for in the original answer. Nor do we find any evidence of plaintiff’s objection to the evidence introduced. Under the above article, we think, that the trial judge properly permitted defendant to amend his answer to conform to the evidence adduced. See Norman v. City of Shreveport, La.App., 141 So.2d 903. Therefore, plaintiff’s contention is without merit.
For the reasons assigned herein, the judgment of the lower court is affirmed; plaintiff to pay all costs of this appeal and of these proceedings.
Affirmed.