## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT


## 09-561


**STREAM FAMILY LIMITED PARTNERSHIP, ET AL.**

**VERSUS**

**MARATHON OIL CO., ET AL.**

**\*\*\*\*\*\*\*\*\*\***
APPEAL FROM THE
THIRTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF CAMERON, NO. 10-16951
HONORABLE H. WARD FONTENOT, PRESIDING
**\*\*\*\*\*\*\*\*\*\***


**SYLVIA R. COOKS**
**JUDGE**


**\*\*\*\*\*\*\*\*\*\***


Court composed of Sylvia R. Cooks, John D. Saunders, and Shannon J. Gremillion, Judges.


**AFFIRMED.**


**SAUNDERS, J., dissents with written reasons.**

A. J. Gray, III
Bert R. Yakupzack
The Gray Law Firm
Capitol One Tower, Suite 1700
P.O. Box 1467
Lake Charles, LA 70602-1467
(337) 494-0694
COUNSEL FOR PLAINTIFFS/APPELLANTS:
        Stream Family Ltd. Partnership, et al.

Richard E. Gerard
Robert E. Landry
Scofield, Gerard, Singletary & Pohorelsky
901 Lakeshore Drive, Suite 900
P.O. Box 3028
Lake Charles, LA 70602-3028
(337) 433-9436
COUNSEL FOR DEFENDANT/APPELLEE:
        Marathon Oil Company

**David A. Pluchinsky**
**Beirne, Maynard & Parsons, L.L.P.**
**1300 Post Oak Blvd., 24th Floor**
**Houston, TX 77056**
**(713) 623-0887**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Marathon Oil Company**

**COOKS, Judge.**

This case involves an oil and gas lease (hereafter the "Stream Lease") issued in 1984 by ancestors in title of the Stream Family Limited Partnership, Harold Steam Investment Trust, Gray Stream Investment Trust, Sandra Stream Investment Trust, and Harold H. Stream, III (hereafter referred to as "Stream") to TXO Production Corporation. The lease covered 662 acres of land near the coast in southwest Cameron Parish. TXO Production became Marathon Oil Company.

Marathon successfully drilled and completed the TXO Gray Estate No. 1 Well on the Stream Property. Approximately one year after completing the well, Marathon began selling interests in the Stream Lease to various third parties. In 1985, Marathon sold a 25% interest in the Stream Lease to Apcot-Finadel Joint Venture (hereafter Apcot). In accordance with the Stream Lease, Marathon requested consent to assign from Stream. Stream consented to the requested assignment on the condition that Marathon (then TXO) remain sole operator of the lease.

In 1987, Apcot assigned its 25% interest in the Stream Lease to Fina Oil and Chemical Company and Petrofina Delaware, Inc. Apcot did not request that Steam consent to the assignment. In 1993, the 25% interest was sold by Fina and Petrofina to E.K. Properties, Inc. According to Stream, it had no knowledge of, and did not consent to, this assignment.

In 1992, Marathon assigned all its remaining 75% interest in the Stream Lease to Shocker Energy of Louisiana, Inc. By letter dated July 13, 1992, Marathon requested that Stream consent to the assignment of the lease to Shocker. By letter dated July 17, 1992, Stream consented on the condition that Marathon not be relieved of any obligations under the Stream Lease. Thereafter, Marathon had no direct involvement with the Stream Lease.

Shocker assigned its interest in the Stream Lease to La Mesa Production, Inc. By letter dated November 5, 1992, La Mesa requested that Stream consent to the assignment of the lease to it from Shocker. By letter dated November 9, 1992, Stream consented with the understanding that the consent did not relieve Marathon and/or Shocker from any obligations under the Stream Lease.

Pursuant to the Stream Lease, La Mesa, as operator, produced the TXO Gray Estate No. 1 Well from 1992 to March 1, 2004. Despite continuing to operate the well and procure revenues in excess of two million dollars, La Mesa made no royalty payments to Stream for six years, from May 1998 through March 2004.

The last royalty payment made by La Mesa occurred on May 25, 1998. According to Stream's Chief Financial Officer/Administrator, Bruce Kirkpatrick, not long after the last royalty payment made by La Mesa, Gayle Bourdier, a Stream land records assistant, prepared a memo to her supervisor concerning La Mesa's failure to make royalty payments. Ms. Bourdier also referenced the fact La Mesa was classified as a "bad operator" by the Department of Conservation, and had numerous complaints against it. She specifically concluded Stream would "have a hard time getting your money." Mr. Kirkpatrick acknowledged the memo raised a red flag within the Stream organization concerning La Mesa's nonpayment of royalties. Kirkpatrick also stated he was unaware of any communication from Stream to Marathon about the royalty nonpayments until a demand letter was sent on March 12, 2004.

In that demand letter, Stream requested payment of royalties from Marathon, Apcot, Shocker and La Mesa, pursuant to La.R.S. 31:137 *et seq.* and La.R.S. 31:212.21 *et seq.* Total E&P USA, Inc. and Atofina Petrochemicals, Inc., as successors to Apcot, Fina and Petrofina responded to Stream's demands by entering into a settlement agreement in exchange for their release. Marathon, Shocker, La

Mesa and E.K. Producers did not pay the past due royalties requested by Stream.

On September 17, 2004, Stream filed its Petition for Damages in this matter requesting judgment in an amount equal to all royalties due since May 1, 1998 under the Stream Lease. Defendants filed peremptory exceptions of prescription. In a judgment dated December 18, 2006, the trial court ordered that any claims of Stream for unpaid royalties under the Stream Lease earlier than three years prior to the filing of the lawsuit were prescribed. This decision has not been appealed, and is a final judgment.

Stream subsequently filed a motion for summary judgment on August 29, 2008, stating it was entitled to all royalties attributable to production from the TXO Gray Estate No. 1 Well from September 17, 2001 through March 1, 2004. Marathon filed its own motion for summary judgment on September 4, 2008, arguing that language in the Stream Lease should absolve Marathon from its obligation to pay Stream the royalties. After a hearing on the motions on October 29, 2008, the trial court set forth the following oral reasons for judgment:

> The Court's going to rely upon a maxim of statutory and contract construction that the [lesser] – and not the lessee – but the [lesser] is included in the greater. Here, this contract is drafted by the Stream interest, and we don't have to worry whether or not Paragraph 8(C)(4) is covered by [Louisiana Mineral Code] Article 133 because it's – the paragraph is fashioned to fit into and it says that certain actions will be an expressed resolutory condition, and if untimely and improper payments of royalties meet this condition, certainly nonpayment would fit. So by the terms of this lease, the history of nonpayment would have activated this condition and resulted in a cancellation of the lease or a dissolution of the lease. Considering that the lease was dissolved well before the last three years, for which plaintiff is now seeking these royalties, [Marathon] would be relieved.
>
> And so the Court will first deny the Motion for Summary Judgment by the plaintiff because I think there's too many things that would develop into material facts of disputed facts, but after that denial, I will grant the Motion for Summary Judgment by [Marathon].

Thus, the trial court found the Stream Lease terminated in accordance with the

express resolutory condition prior to September of 2001, which was well after the continued nonpayment of royalties by La Mesa that began in May of 1998.

Stream has appealed the trial court's grant of summary judgment in favor of Marathon, asserting the following assignments of error:

(1) The trial court erred in granting the motion for summary judgment dismissing Stream's claims against Marathon;

(2) Having failed to apply as a matter of law that La.R.S. Art. 31:137 is an indispensable prerequisite to judicial demand for damages or dissolution of the lease, the trial court erred in granting a motion for summary judgment dismissing Stream's claims against Marathon;

(3) If the Stream Lease terminated by express resolutory condition, the lease was reconducted when the lessee remained in possession and the trial court erred in granting the motion for summary judgment dismissing Stream's claims against Marathon.

## ANALYSIS

Because the judgment on appeal is a summary judgment, our review is *de novo*, "using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate, i.e., whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law." *Supreme Serv. & Specialty Co., Inc. v. Sonny Greer, Inc.*, 06-1827, p. 4 (La.5/22/07), 958 So.2d 634, 638.

The motion for summary judgment is a procedural device to avoid a full-scale trial when there is no genuine issue of material fact. *Prime Income Asset Management, Inc. v. Tauzin*, 07-1380 (La.App. 3 Cir. 4/30/08), 981 So.2d 897. Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action, except certain domestic actions. The procedure is favored and shall be construed to accomplish these ends. La.Code Civ.P. art. 966(A)(2). The motion should be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that

there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B).

At issue in this case is Paragraph 8( C )(4) of the Steam Lease, which provides as follows:

> Untimely or improper payment fo royalties shall constitute an express resolutory condition of this lease with respect to LESSEE's rights. Except in instances of willfully or persistently late or improper payment LESSOR shall give twenty-one (21) days written notice of LESSEE's failure to make timely or proper payment of royalties as a prerequisite to a successful judicial demand for dissolution of the lease. In the instance of willfully or persistently late or improper payment, LESSOR need not give such notice and the lease shall resolve immediately.

Marathon argued, and the trial court agreed, that the record established the royalty payments owed by La Mesa to Stream were "willfully or persistently late or improper," thereby activating the mandatory, express resolutory condition contained in the lease.

Stream argues, while the record is clear that royalties ceased being paid in 1998, there is no evidence in the record that the cessation of payments were *willful* or *intentional* as found by the trial court. The record simply establishes payments were not made.

We note Stream's Chief Financial Officer/Administrator, Bruce Kirkpatrick, testified as follows:

> Q.   . . . to the Stream interest, is it your belief that the nonpayment of royalties by E.K., La Mesa and/or Shocker was willful and intentional at that point in time when the - - I mean, were there any other royalty owners under the particular well other than the Stream interest?
>
> A.   There were not.
>
> Q.   And again, its your belief that - -
>
> A.   It's my belief that it was intentionally or willfully not paid.
>
> Q.   Okay.  And we don't know why?

A.    No.

Although he was unsure as to the reasons why royalties were not paid, Kirkpatrick was steadfast that he believed that the royalties were "intentionally or willfully not paid." Moreover, in its opposition memorandum, La Mesa admitted they were "unable to pay the royalties during [the six-year] time period" and that "these payments became persistently late and improper." Considering these admissions, we cannot say the trial court erred in finding the payments were "willfully or persistently late or improper."

Stream also attempts to argue that Paragraph 8(C)(4) refers only to "willfully or persistently late or improper *payment*," and makes no specific reference to *nonpayments*. Essentially, Stream argues that nonpayment, even over a substantial period of time, falls outside of the phrase "willfully or persistently late or improper payment." The trial court disagreed, finding if the express resolutory condition applied to a willfully or persistently late or improper payment, then "certainly nonpayment would fit." Marathon notes that the trial court's conclusion that nonpayment "fits" is buttressed by Stream itself. In the March 12, 2004 demand letter sent by Stream, it specifically stated that "[u]nder Paragraph 8(C)(4) of the subject lease, *failure to pay royalties is an express resolutory condition of the subject lease.*" We agree, and find no merit in this argument.

Stream also argues on appeal that the first sentence of Paragraph 8(C)(4) only refers to the "LESSEE's rights" and not the "Lessee's obligations." We agree with Marathon, that this argument is "purely semantical," and does not change the outcome in this case. The termination of the "lessee's rights" under the express resolutory condition ends all rights that La Mesa had under the lease, including the right to operate wells. This would make La Mesa a trespasser on the leased property, and

Stream would have every right to pursue them for recovery of the amounts illegally removed from the property. The same result follows whether the termination occasioned by the activation of the express resolutory condition is described as the termination of the lease or the termination of the lessee's rights.

In its second assignment of error, Stream argues should this Court consider the express resolutory condition as applicable, La.R.S. 31:137 *et seq.*, recognizes written notice by the lessee as an indispensable prerequisite to judicial demand for dissolution of a lease. La.R.S. 31:137 provides that "[i]f a mineral lessor seeks relief for the failure of his lessee to make timely or proper payment of royalties, he must give his lessee written notice of such failure as a prerequisite to a judicial demand for damages or dissolution of the lease."[1]

Stream argues it and Marathon "attempted to avoid the indispensable, prerequisite of notice by making willfully late, persistently late or improper payments an express resolutory condition. The attempt purports to avoid judicial discretion for dissolution of a lease by suggesting the reason for and the occasion of nonpayment of royalties could be determined subjectively." Stream argues it and Marathon cannot contract away the indispensable prerequisite of written notice as required by the Mineral Code because such is barred by public policy.

Marathon notes that the public policy argument by Stream attempts to distance itself from the express resolutory condition it placed in the lease. Marathon also

[1] The official comments to La.R.S. 31:137 state that the "total effect of [La.R.S. 31:137-141], then, is to provide a spur to timely payment of royalties due while giving *lessees* a reasonable way in which to avoid the harsh remedy of cancellation." (Emphasis added.) The comments also further note it is the "intent of Articles 137-141 to provide lessors with a meaningful remedy while simultaneously giving operators who have made substantial investments in producing properties the security of title which the nature and size of their investment deserves." The comments clearly indicate of great concern was the situation of a lessee, who expended considerable sums of money in developing and producing a property, from being subject to dissolution simply because a few payments were missed. That situation is not present here. What we have instead, is a lessor who, by its own acknowledgment, was aware of the lessee's nonpayments, yet did nothing to pursue payment. This was not the situation which Articles 137-141 were designed to protect. Clearly, Stream has a remedy and can pursue La Mesa for the payments owed.

-7-

contends La.R.S. 31:137 does not contradict La.R.S. 31:133, but "rather provides the framework for situations in which a lease does not contain an express resolutory condition for royalty nonpayment, thereby requiring the mineral lessor to seek judicial demand for dissolution of the lease." La.R.S. 31:133, entitled "Termination of Mineral Lease," provides "[a] mineral lease terminates at the expiration of the agreed term or upon the occurrence of an express resolutory condition." The official comments to La.R.S. 31:133 discuss the intent of that article, stating it is "to distinguish those situations in which a lease expires by its own terms . . . by the occurrence of some express resolutory condition. . . from those in which the grievance is nonperformance of the obligations of the lease." The comments further state that "when such resolutory conditions occur, no putting in default is necessary as a prerequisite to an action seeking to have the lease declared terminated."

The express resolutory condition found in the Stream lease clearly provides, "[i]n the instance of willfully or persistently late or improper payment, LESSOR need not give such notice and the lease shall resolve immediately." The trial court found La Mesa's failure to make royalty payments triggered the express resolutory condition in the lease and, thus, there was no need to seek judicial demand for dissolution under La.R.S. 31:137. We find no error in this conclusion.

Stream argues this Court's decision in *Acquisitions, Inc. v. Frontier Explorations, Inc.*, 432 So.2d 1095 (La.App. 3 Cir. 1983) stands for the proposition that the written notice prerequisite of La.R.S. 31:137 is applicable in any situation where lease termination results from nonpayment of royalties. However, in *Acquisitions*, the shut-in provision at issue did not contain an express resolutory condition. In analyzing La.R.S. 31:133 and La.R.S. 31:137, this Court noted "whether the remedy of cancellation is available without a putting in default *depends*

*upon the terms of the lease.*" Because the lease did not contain an express resolutory condition, we found the written notice requirement on La.R.S. 31:137 applicable. That is not the case here because the Stream lease contains such an express resolutory condition.

In its final assignment of error, Steam argues that the lease reconducted and remained in existence on a month to month basis. Marathon notes that Stream failed to raise this argument below, and it cannot be considered for the first time on appeal. Stream acknowledges it did not argue the issue of reconduction below, but asserts this court, "has authority to consider any legal point or theory presented in the case, when the record contains all the necessary evidence to determine the question, even though no ruling was made on that issue by the trial court." *See Placid Oil Company v. Taylor*, 313 So.2d 626 (La.App. 3 Cir. 1975). *Placid* relied upon this court's earlier ruling in *Devillier v. City of Opelousas*, 247 So.2d 412 (La.App. 3rd Cir. 1971), wherein we expressed the applicable rule as follows:

> Ordinarily, issues not passed on by the trial court are not reviewable by the appellate court. Nevertheless, the appellate court in discharging its duty to render a judgment which is just, legal and proper upon the record, has authority to consider any legal point or theory presented in the case, when the record contains all the evidence necessary to determine the question, even though no ruling was made on that issue by the trial court. LSA-C.C.P. Art. 2164, and comment (a) under that article; *Blanchard v. Ogima*, 200 So.2d 374 (La.App. 4 Cir. 1967); *Norman v. City of Shreveport*, 141 So.2d 903 (La.App. 2 Cir. 1962); *Ohanna v. Ohanna*, 129 So.2d 249 (La.App. 4 Cir. 1961); *Williams v. American Employers Insurance Co.*, 10 So.2d 516 (La.App. 1 Cir. 1942).

In reviewing the record, we note Stream was aware of and had sufficient opportunity to prepare and submit the issue of reconduction for consideration below, but for whatever reason elected not to do so. Where a party fails to raise an issue in the trial court in pleadings, in an opposition to a motion for summary judgment, or in a motion for new trial, the issue is not preserved for consideration on appeal. *Warner v. Alex*

*Enterprises, Inc.*, 08-929 (La.App. 4 Cir. 1/28/09), 4 So.3d 922; see also Rule 1-3, Uniform Rules--Courts of Appeal. Therefore, we will not entertain this issue for the first time on appellate review.

## DECREE

For the foregoing reasons, the judgment of the trial court if affirmed. All costs of this appeal are assessed to plaintiffs-appellants, Stream Family Limited Partnership, et al.

**AFFIRMED.**

**SAUNDERS, Judge**

It is well settled that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B).

In the matter before us there are still an unresolved issue of material fact. There is no evidence in the record as to the willfulness of the nonpayment of royalties. Testimony from Bruce Kirkpatrick, Stream's CFO, does not settle the issue as to La Mesa's intentions. Further, the language "willfully or persistently late or improper payment" indicates that there must, in fact, be a payment. The majority notes with approval the trial court's statement that "certainly nonpayment would fit" into this language. I don't find this to necessarily be true. It is an issue that comes down to the intent of the parties to the lease. A literal reading of the lease indicates that a nonpayment is not one of the triggers that would effectuate the resolutory condition. At a minimum, the intent of the parties is a factual determination that is not appropriate for summary judgment.

Even if the requisite conduct necessary to trigger the clause in Paragraph 8(C)(4) existed, it is still unclear that the parties intended for the lease to automatically dissolve. Not only does it seem improbable that Stream would desire such a result, when read as a whole, the lease suggests in paragraphs 6 and 19 that they did not.

Paragraph 6 of the lease states that if the lease terminates for **any** cause, the Lessee must furnish the Lessor with a recordable release within thirty (30) days. Paragraph 19 states that if Lessee is not complying with the terms of the lease, Lessor shall notify Lessee in writing and allow fifteen (15) days for Lessee to cure all monetary defaults. Certainly nonpayment of royalties would fall under such

noncompliance and therefore should not automatically dissolve the lease.

Furthermore, there remains the issue of reconduction of the lease. When a lease is for a fixed term, as was the lease in question, the lease terminates upon the expiration of that term unless it is reconducted. La.Civ.Code art. 2720. A lease is reconducted if, after the expiration of the term, and without notice to vacate or terminate or other opposition by the lessor or the lessee, the lessee remains in possession for one week in the case of a nonagricultural lease with a fixed term that is longer than a week. La.Civ.Code art. 2721. The lessee clearly remained in possession of the leased premises long after it ceased making royalty payments, and it appears that the lease was reconducted.

The hangup on this issue is that the argument for reconduction was not made at the trial court level. However, Louisiana Code of Civil Procedure Article 2164 provides this court with the express authority to render *any* judgment which is just, legal, and proper:

> The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages for frivolous appeal; and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.

The court in *Givens v. Richland-Morris Agency, Inc.*, 369 So.2d 1184, 1185 (La.App. 2 Cir. 1979), considered a similar issue and held that "this court has the authority under La.C.C.P. art. 2164 to render any judgment which is just, legal, and proper upon the record on appeal irrespective of whether a particular legal point or theory is made."

It is also well settled law before this court that when the record is sufficient to make a determination, the court has the authority to consider an issue despite whether the issue had been ruled on at the trial court level. *Placid Oil v. Taylor*, 313 So.2d 626 (La.App. 3 Cir.), *writ granted and remanded for rehearing*, 318 So.2d 40(La.),

*on remand*, 325 So.2d 313 (La.App. 3 Cir. 1975), *writ denied*, 369 So.2d 455 (La.1976), *Devillier v. City of Opelousas*, 247 So.2d 626 (La.App. 3 Cir. 1971), *Savoy v. Cecil Perry Imp. Co.*, 96-889 (La.App. 3 Cir. 2/5/97), 691 So.2d 692.

> Ordinarily, issues not passed on by the trial court are not reviewable by the appellate court. Nevertheless, the appellate court in discharging its duty to render a judgment which is just, legal and proper upon the record, has authority to consider any legal point or theory presented in the case, when the record contains all the evidence necessary to determine the question, even though no ruling was made on that issue by the trial court. LSA-C.C.P. Art. 2164, and comment (a) under that article; *Blanchard v. Ogima*, 200 So.2d 374 (La.App. 4 Cir. 1967); *Norman v. City of Shreveport*, 141 So.2d 903 (La.App. 2 Cir. 1962); *Ohanna v. Ohanna*, 129 So.2d 249 (La.App. 4 Cir. 1961); *Williams v. American Employers Insurance Co.*, 10 So.2d 516 (La.App. 1 Cir. 1942).

*Devillier*, 247 So.2d at 418.

The majority opinion notes the Uniform Rules, Courts of Appeal, Rule 1-3, Scope of Review, which states that "[t]he Courts of Appeal will review only issues which were submitted to the trial court and which are contained in specifications or assignments of error, **unless the interest of justice clearly requires otherwise**." I find that this is a case where this caveat would be well applied. There is a great probability that the entire case will turn on the issue of the lease's reconduction. To ignore the issue when the record provides us with ample information to make a judgment would clearly run contrary to the interests of justice.

Given the questions regarding the intent of the parties, whether the resolutory condition should apply, and the strong case to be made for entertaining the reconduction issue, I feel that this matter would be better resolved at trial and that the grant of summary judgment should be reversed.