MARC E. JOHNSON, Judge.
| ¡)Defendant/Appellant, Warren G. Treme, appeals the partial summary judgment in favor of third-party defendant, *607 Joseph C. Canizaro, which resulted in the dismissal of Mr. Treme’s third-party demands against Mr. Canizaro filed in the 24th Judicial District Court, Division “J”. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
The pertinent facts for this appeal are as follows:
On July 26, 2006, Plaintiff/Appellee, First Bank and Trust (hereinafter referred to as “the Bank”) filed a Petition for Exec-utory Process against Mr. Treme to collect amounts due on a promissory note dated April 29, 2004 in the amount of $1,113,871.70, which resulted in the seizure and sale of Mr. Treme’s 2005 Chevrolet Avalanche. The Bank then filed a Supplemental Petition for Deficiency Judgment on February 9, 2007 for the remaining amount owed for the April 29, 2004 promissory note. In response, Mr. Treme filed an answer to the petition, a 13reconventional demand, and a third-party demand on July 17, 2007 against the Bank, First Bank and Trust Community Development Corporation (hereinafter referred to as “First Bank CDC”), and Mr. Caniza-ro, the Bank’s chairman.
In his reconventional and third-party demands, Mr. Treme asserted claims arising from two sets of agreements. As to the first set of agreements, Mr. Treme averred that he was contacted by representatives of the Bank in late 1996 and early 1997 and was requested to enter into numerous contracts for the construction and renovation of properties in a blighted area in and around the St. Thomas Housing Project. He alleged that he and the Bank subsequently entered into a series of contracts with the Bank over a period of time from August 1996 through 2004 for the blighted property. Mr. Treme stated the project had serious cost overruns that needed additional loans to cover the costs. According to Mr. Treme, the Bank loaned him the additional money with the assurance that the cost overruns would be recouped on the subsequent project; however, the recoupment by Mr. Treme did not occur. When Mr. Treme failed to pay the additional loans, the Bank began its collection efforts. Because of the collection efforts, Mr. Treme alleged the Bank, First Bank CDC, and Mr. Canizaro’s actions constituted breach of contract, fraud, fraudulent inducement, illegal tying, extortionate banking transaction, and breach of fiduciary duty in relation to a renovation project for the St. Thomas Housing Project.
As to the second set of agreements, Mr. Treme averred that he was involved in a joint venture with the Bank to build a banking branch in Kenner, Louisiana. Mr. Treme maintained that Mr. Canizaro used his position as chairman to interfere with the purchase of the property. As such, Mr. Treme also alleged that Mr. Caniza-ro’s conduct constituted breach of fiduciary duty, breach of contract, and |4intentional interference with contractual relations in reference to a joint venture to build the banking branch.
On October 17, 2007, the Bank, First Bank CDC, and Mr. Canizaro filed a peremptory exception of prescription, a peremptory exception of no cause of action, a peremptory exception of no right of action, and a dilatory exception of vagueness. In a judgment rendered on October 9, 2009, the trial court sustained, in part, the exception of prescription regarding the illegal tying claims; sustained the exception of no cause of action regarding the breach of fiduciary duty claims and allowed Mr. Treme 15 days to amend his demands; sustained the exception of no cause of action regarding the intentional interference with contractual relations claims and al *608 lowed Mr. Treme 15 days to amend his demands; and sustained the exception of no right of action regarding the claims against Mr. Canizaro as a corporate officer and allowed Mr. Treme 15 days to amend his demands. In all other respects, the trial court overruled the exceptions. In a First Amended, Supplemental and Restated Reconventional Demand and Third-Party Demand filed on October 23, 2009, Mr. Treme expanded the language of his original allegations and also alleged Mr. Canizaro’s conduct regarding the building of the banking branch also constituted a breach of a joint venture agreement.
On February 2, 2012, the Bank, First Bank CDC, and Mr. Canizaro filed three motions for partial summary judgment. The first motion requested that the trial court dismiss Mr. Treme’s breach of fiduciary claims against the Bank, First Bank CDC, and Mr. Canizaro on the basis that Mr. Treme failed to put forth any evidence of a joint venture relationship or any fiduciary duties between any of the parties. The second motion requested that the trial court dismiss Mr. Treme’s claims against Mr. Canizaro because Mr. Treme failed to put forth any evidence to prove Mr. Cani-zaro acted outside of his official capacity as a corporate officer of |5the Bank. The third motion requested that the trial court dismiss Mr. Treme’s claims regarding the building of the banking branch in Kenner on the basis that an alleged joint venture agreement could not be breached when Mr. Treme had no intention of performing under that alleged agreement.
The motions for partial summary judgment were heard on March 19, 2012. In its judgment rendered on August 10, 2012, the trial court granted partial summary judgment in reference to Mr. Treme’s claims against Mr. Canizaro in his personal capacity. The trial court held that in the “absence of evidence that Canizaro ever acted outside of his official capacity, or that he personally undertook any contractual obligation which expressly or indirectly lead [sic] to any fiduciary duty or other legal duty which he violated, there is no genuine issue of material fact.... ” The trial court also granted the partial summary judgment on Mr. Treme’s breach of fiduciary duty claims. The trial court found that other than vague assertions in his deposition, Mr. Treme failed to present sufficient corroborating evidence of a joint venture or any intent by the Bank, First Bank CDC, or Mr. Canizaro to enter into any relationship. Additionally, the trial court granted partial summary judgment on Mr. Treme’s claims regarding the building of the banking branch in Kenner. The trial court held there was an absence of evidence of a joint venture agreement between Mr. Treme and the Bank to build a branch on the alleged site.
On September 28, 2012, Mr. Treme filed an application for supervisory writs with this Court to review the trial court’s judgment granting the three partial summary judgments.[1] Subsequently, Mr. Treme also filed a Petition and Order for Appeal on October 5, 2012, which was granted on October 15, 2012, seeking appellate review of the same issues raised in the writ application. In First Bank and Trust, et al. v. Warren G. Treme, 12-733 (La.App. 5 Cir. 12/6/12) (unpublished writ), Johnson J. dissenting, this Court denied the writ on the merits of the application. The instant appeal followed.
ASSIGNMENTS OF ERROR[2]
On appeal, Mr. Treme alleges the trial court erred in finding there were *609 no genuine issues of material facts concerning his claims against Mr. Canizaro for interference with contractual rights between Mr. Treme and the Bank for the renovation project and the Albertson’s site.
LAW AND ANALYSIS

General Summary Judgment Law

Appellate courts review summary judgments de novo, using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate, asking whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Favre v. Boh Bros. Const. Co., L.L.C., 11-451 (La.App. 5 Cir. 3/13/12); 90 So.3d 481, 485, writ denied, 12-1024 (La.6/22/12); 91 So.3d 976. The summary judgment procedure is favored and is designed to secure the just, speedy and inexpensive determination of every action, except those disallowed by law. Id. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to material fact, and that the movant is entitled to judgment as a matter of law. Id. 485.
|7The initial burden of proof is with the mover to show that no genuine issue of material fact exists. Chambers-Johnson v. Applebee’s Restaurant, 12-98 (La.App. 5 Cir. 9/11/12); 101 So.3d 473, 475-76. If the moving party will not bear the burden of proof at trial, the moving party must only point out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Id. The non-moving party must then produce factual support sufficient to establish that it will be able to satisfy its evidentiary burden of proof at trial. Id., 101 So.3d at 476. If the non-moving party fails to do so, there is no genuine issue of material fact, and summary judgment should be granted. Id.

Renovation Project

Mr. Treme alleges the trial court erred in granting the summary judgment in favor of Mr. Canizaro by finding Mr. Caniza-ro cannot be personally liable for his actions taken in his official capacity. Mr. Treme argues Mr. Canizaro had an individual and private interest in the Bank’s efforts to renovate the properties in and around the St. Thomas Housing Project. Mr. Treme claims that, while Mr. Canizaro hid behind his position as chairman of the board for the Bank and pretended that he did not involve himself in the day-to-day operations of the construction activities, the evidence presented at trial proved Mr. Canizaro was intimately involved in those activities. Mr. Treme contends his testimony that Mr. Canizaro was motivated by tax credits to renovate the St. Thomas Housing Project and forcibly ordered him to hire 20 laborers and subcontraetors-which made the project financially more burdensome-is direct evidence of Mr. Cani- *610 zaro’s interference with his contracts. Ultimately, Mr. Treme maintains that he produced sufficient evidence for a jury to determine whether Mr. Canizaro intentionally interfered with the construction contracts between himself and the Bank.
|RIn opposition, Mr. Canizaro contends this Court should refrain from considering Mr. Treme’s intentional interference claim regarding the St. Thomas Housing Project construction contracts because Mr. Treme is raising that claim for the first time on appeal. Mr. Canizaro proceeds to argue, that even if this Court addresses the merits of Mr. Treme’s claim, it should be determined that no genuine issue of material fact exists against him in his personal capacity. Mr. Canizaro argues that, aside from Mr. Treme’s own conclusory testimony and allegations, Mr. Treme has not shown any evidence that he acted outside of his role as a corporate officer of the Bank. Ultimately, Mr. Canizaro avers the trial court properly granted the summary judgment in his favor because Mr. Treme failed to prove elements essential to his intentional interference claim.
A review of the record reveals that Mr. Treme failed to present an intentional interference claim against Mr. Canizaro regarding the St. Thomas Housing Project renovations in the trial court for review. In his reconventional demand and amended reconventional demand, Mr. Treme alleged the actions of Mr. Canizaro constituted breach of contract, fraud, fraudulent inducement, illegal tying, breach of fiduciary duty, and extortionate banking transaction. Mr. Treme also failed to argue Mr. Caniza-ro’s intentional interference in the renovation projects in his brief in opposition to the motion for partial summary judgment or in oral argument against the motion. Consequently, the trial court did not address a claim of intentional interference of Mr. Canizaro in the renovation projects in its judgment.
As a general rule, appellate courts will not consider issues raised for the first time on appeal, which are not pleaded in the court below and which the trial court has not addressed. Geiger v. State ex rel. Dept. of Health and Hosp., 01-2206 (La.4/12/02); 815 So.2d 80, 86, citing Boudreaux v. State through Dept. of Transp. & Dev., 01-1329 (La.2/26/02); 815 So.2d 7. “Where a party fails to raise an issue in the trial court in pleadings, in an opposition to a motion for summary judgment, or in a motion for new trial, the issue is not preserved for consideration on appeal.” Monlezun v. Lyon Interests, Inc., 11-576 (La.App. 3 Cir. 11/2/11); 76 So.3d 628, 636, quoting Stream Family Ltd. P’ship v. Marathon Oil Co., 09-561 (La.App. 3 Cir. 12/23/09); 27 So.3d 354, 360.
Because Mr. Treme did not present this issue to the trial court for review, he is now precluded from having this Court consider the merits of this issue.

Albertson’s Site

Mr. Treme alleges the trial court erred in granting the summary judgment in favor of Mr. Canizaro regarding the joint venture agreement to develop a banking branch office in Kenner, Louisiana. Mr. Treme avers the trial court completely discounted his sworn testimony that established an oral agreement was reached between him and the Bank through David Moore, the president of the Bank during the relevant time period. Mr. Treme contends his testimony proved that he and Mr. Moore reached an agreement in which Mr. Treme would locate an appropriate site for a branch office in Kenner, build a bank branch, and lease it back to the Bank.
*611 FIRST BANK AND TRUST v. TREME
Cite as 129 So.3d 605 (La.App. 5 Cir. 2013)
La. 611
In furtherance of the agreement, Mr. Treme states that he found a six acre site; however, Albertson’s wanted to develop the entire site. Mr. Treme asserts that once Mr. Canizaro learned of the possible deal and Mr. Treme’s involvement with Clark Heebe, an employee of the Bank, for development of the site, Mr. Canizaro intentionally interfered with his ability to negotiate with Albertson’s by contacting the site owner and using confidential information. As a result of Mr. Canizaro’s contact with the site owner, Mr. Treme further asserts the site owner would not return his phone calls, which constituted a tortious interference with his ability to perform pursuant to the agreement. Through his testimony and the 110admission of Mr. Heebe’s affidavit, Mr. Treme argues he presented sufficient evidence of an oral agreement between him and the Bank.
Mr. Canizaro argues the trial court properly granted the summary judgment in his favor with respect to the Albertson’s site because Mr. Treme failed to produce any evidence to show there was ever a contract between him and the Bank or any interference with the alleged contract. Mr. Canizaro avers Mr. Treme failed to prove the existence of any of the formalities of a joint venture agreement to build a bank branch in Kenner. Mr. Canizaro maintains the affidavit of Mr. Heebe did not state that Mr. Treme actually had an agreement with the Bank, but only attests that Mr. Treme told him that an agreement existed. Furthermore, Mr. Canizaro contends Mr. Treme failed to set forth a valid cause of action for intentional interference with a contract claim against him because no contractual relationship existed between Mr. Treme and the Bank.
[6] In the judgment, the trial court found there was insufficient evidence presented by Mr. Treme that would constitute
a genuine issue of material fact as to the existence of an intentional interference claim pursuant to 9 to 5 Fashions, Inc., 538 So.2d 228 (La.1989). In addition, the trial court found there was an absence of evidence of a joint venture agreement between the Bank and Mr. Treme to build a branch on the property which would have been Albertson’s.
At the hearing, Mr. Treme submitted his depositions stating that he had a joint venture agreement with the Bank to build a branch in Kenner, and Mr. Canizaro interfered with that contract. Mr. Treme also submitted an affidavit of Mr. Heebe. In the affidavit, Mr. Heebe attested to the following, in pertinent part:
(5) That he understood from Treme that Treme had agreed to find suitable property in Kenner, Louisiana to build a branch for First Bank and Trust (“First Bank”).
|n(6) That Treme located approximately six acres in Kenner, Louisiana as a potential site.
(7) That, as it turned out, First Bank only needed one acre for its branch and requested that Treme find another tenant for the other five acres.
(8) That Albertson’s indicated an interest in developing the property but wanted the entire six acres.
(9) That he and Treme entered into a joint venture to develop the property to be used as Albertson’s
(10) That Treme made a full disclosure of the arrangement to First Bank and advised First Bank that another site would be located to accommodate a branch office for the bank.
(11) That Joseph Canizaro (“Canizaro”), then Chairman of First Bank, called him at home and requested that affiant report to Canizaro’s office. That affiant reported to Canizaro’s office the next morning and Canizaro told affiant that
*612 his activities of proceeding with a development with Treme constituted a conflict of interest and was in violation of the employees’ handbook. That Caniza-ro then asked for a copy of the handbook and reviewed same but could not show affiant any provision that prohibited his activities. That Canizaro was angry and stated to affiant “you don’t have sh[* *]. The seller will not sell to you. I will not let that happen.”
(12) That Canizaro advised him that the bank intended to buy the property.
(18) That a few weeks later, Canizaro told affiant that he would allow the deal to go forward but, by that time, Albert-son’s had selected another site with another builder.
(14) That based upon his observation, Canizaro had interfered with the ability of affiant to proceed with the Albert-son’s deal.
The essential elements of a joint venture are generally the same as those of a partnership, e.g., two or more parties combining their property, labor, skill, etc., in the conduct of the venture for joint profit or benefits, with each having some right of control. Kelly v. Boh Bros. Const. Co., 96-1051 (La.App. 5 Cir. 4/9/97); 694 So.2d 463, 468. Joint ventures arise only where the parties intended the relationship to exist, and they are ultimately predicated upon contract, either | ^express or implied. Broadmoor, L.L.C. v. Ernest N. Morial New Orleans Exhibition Hall Authority, 04-0211 (La.3/18/04); 867 So.2d 651, 663. When a writing is not required by law, a contract not reduced to writing for a price or value in excess of five hundred dollars ($500.00) must be proved by, at least, one witness and other corroborating circumstances. La. C.C. art. 1846. A plaintiff may offer his own testimony in support of his claim; however, the other circumstances which corroborate the claim must come from a source other than the plaintiff. Regel L. Bisso, L.L.C. v. Stortz, 11-25 (La.App. 5 Cir. 10/25/11); 77 So.3d 1033, 1035-36.
After our de novo review of the partial summary judgment and the evidence submitted, we do not find that Mr. Treme submitted sufficient evidence to prove the existence of a joint venture agreement between him and the Bank. Although Mr. Ti'eme offered his own testimony regarding the alleged joint venture agreement, the submission of Mr. Heebe’s affidavit as corroborating evidence is insufficient. Mr. Heebe’s affidavit does not state that he had any personal knowledge of a joint venture between Mr. Treme and the Bank. The affidavit simply states that Mr. Heebe “understood from Treme that Treme had agreed to find suitable property” in Ken-ner to build a branch for the Bank. Mr. Heebe’s affidavit is also void of any information of how Mr. Treme and the Bank would conduct the venture for joint profit or the level of control for each party. Without any further corroborating circumstance, Mr. Treme failed to meet the burden of proving an oral contract over $500.00. Because Mr. Treme failed to prove the existence of a joint venture between him and the Bank, there is no need for this Court to address whether Mr. Canizaro intentionally interfered with that contract.
Therefore, we find that partial summary judgment was properly granted on this issue.
1 ^DECREE
For the foregoing reasons, we find the partial summary judgments in favor of Joseph C. Canizaro were properly granted. Warren G. Treme is assessed the costs of this appeal.

AFFIRMED

WICKER, J., CONCURS WITH REASONS.

. Although there is no information regarding this writ application in the appellate record, we take judicial notice of the application and the writ disposition. See, La. C.E. art. 201.

. Despite the fact that the panel in writ appli *609 cation Treme, supra, addressed the correctness of the granting of the partial summary judgments, we do not consider the disposition of that writ as the law of the case. The "law of the case” principle embodies the rule that an appellate court will not reconsider its own rulings of law in the same case. Lejano v. Bandak, 97-0388 (La.12/12/97); 705 So.2d 158, 170, cert. denied, Lejano v. K.S. Bandak Assuranceforeningen Gard, 525 U.S. 815, 119 S.Ct. 52, 142 L.Ed.2d 40. However, the doctrine is discretionary and is not applicable in cases of palpable error or when, if the law of the case were applied, manifest injustice would occur. Id., citing Vincent v. Ray Brandt Dodge, 94-291 (La.App. 5 Cir. 3/1/95); 652 So.2d 84. Because the supervisory writ consideration of the granting of the partial summary judgments related to Mr. Treme’s claims against Mr. Canizaro constituted palpable error, we are properly reviewing those claims in this appeal.